**John J. COSTELLO, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**Floyd E. STEVENS, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**Nos. 76–2004, 76–2005.**

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1978.

Rehearing and Rehearing En Banc
Denied Dec. 7, 1978.

tied to the cost of living index, rather than to the active duty pay scales. Appellants are military personnel who retired before the 1963 statutory changes went into effect. They brought suit under the Tucker Act, 28 U.S.C. § 1346(a)(2), claiming that they had suffered a monetary loss under the 1963 computation system and that the 1963 Act denies them their property without due process in violation of the fifth amendment. The district court dismissed the complaints for failure to state a claim, finding that appellants did not have any vested right which was denied by the government. On appeal, appellants renew their contentions made below that they have a vested right to recompute their retirement pay in accordance with the law in effect at the time they retired and that the 1963 Act retroactively deprived them of that vested right.

As to vested rights, the distinction between earned military pay and that to be earned in the future has long been recognized. The Supreme Court has recently restated it:

"No one disputes that Congress may prospectively reduce the pay of members of the Armed Forces, even if that reduction deprived members of benefits they had expected to be able to earn. Cf. *Bell v. U. S.* [366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961)]; *U. S. v. Dickerson*, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940). It is quite a different matter, however, for Congress to deprive a service member of pay due for services already performed, but still owing."

*United States v. Larionoff*, 431 U.S. 864, 879, 97 S.Ct. 2150, 2159, 53 L.Ed.2d 48 (1977).

Appellants contend first that the United States is contractually obliged to compensate them under the old law by the terms of their enlistment contract. *United States v. Larionoff, supra*, rejects this proposition. It states:

"Both the Government and respondents recognize that '[a] soldier's entitlement to

Siegfried Hesse (argued), of Dodge, Reyes, Brorby, Randall, Kahn & Driscoll, Oakland, Cal., for plaintiffs-appellants.

Donnie Hoover (argued), Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MERRILL and TANG, Circuit Judges, and TAYLOR,* District Judge.

MERRILL, Circuit Judge:

Before 1963, the compensation of retired military personnel was calculated with reference to the pay received by those on active duty; when the active duty pay scales increased or decreased, retirement pay was correspondingly recomputed. In 1963, Congress changed the statute so that adjustment of retirement compensation was

---

* Honorable Fred M. Taylor, Senior United States District Judge of the District of Idaho, sitting by designation.

pay is dependent upon statutory right,' *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961), and that accordingly the rights of the affected service members must be determined by reference to the statutes and regulations governing the [compensation], rather than to ordinary contract principles."

431 U.S. at 869, 97 S.Ct. at 2154. To the same effect is *Andrews v. United States,* 175 Ct.Cl. 561 (1966). The Supreme Court, in *Larionoff,* continues in footnote 7 at page 869, 97 S.Ct. at page 2154:

"Indeed, this is implicitly recognized in the contracts executed by the named respondents, which state that they agree to extend their enlistments 'in consideration of the pay, allowances, and benefits which will accrue to me during the continuances of my service,' rather than stating any fixed compensation."

The language there quoted by the Court is similar to language in the enlistment contracts upon which appellants rely.

■ We conclude that appellants have no contract right to have their compensation computed under the old law.

Appellants further contend that retirement pay is, in the language of *Larionoff,* "pay due for services already performed but still owing"; that it is deferred compensation for past services.

This proceeds upon the premise that with military retirement all compensible service owing to the government ceases. This has been established as a false premise since at least 1881.

In *United States v. Tyler,* 105 U.S. 244, 26 L.Ed. 985 (1881), the Court considered a statute that increased the pay of military officers by 10 percent for every 5 years of service. The question presented was whether appellee, a retired captain, was entitled to this pay increase. The Court

ruled that Congress had distinguished between officers "wholly retired" whose retirement compensation was fixed at a lump sum, and officers "retired from active service" whose continuing compensation was fixed by statute at "75 per centum of the pay of the rank upon which they are retired." As to the latter, the Court held that "while not required to perform full service, they are part of the army, and may be assigned to such duty as the laws and regulations permit." 105 U.S. at 245, 26 L.Ed. 985. Accordingly it was held that officers retired from active service were entitled to the increase in pay.

The Court of Claims, considering the nature of retirement pay, has arrived at the same result. In *Lemly v. United States,* 75 F.Supp. 248, 249, 109 Ct.Cl. 760, 763 (1948), the court stated:

"Retirement pay * * * is a continuation of active pay on a reduced basis. Even though an officer is retired from active duty and is receiving retirement pay, he is still subject to call to active duty as long as his physical condition will permit. He is still an officer in the service of his country even though on the retired list."

Further, the Court of Claims has reached the same result as to the precise problem before us. Appellants' contention that retirement pay is deferred compensation for past services was considered and expressly rejected in *Abbott v. United States,* 200 Ct.Cl. 384 (1973).[1]

Appellants contend that all these holdings must be re-examined in the light of the Supreme Court's recent holding in *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48, *supra.*

That case deals with the military re-enlistment bonus. For many years a bonus has been used as an incentive to re-enlistment, being a sum added to the regular

1. Appellees rely on *Commissioner v. Wilkerson,* 368 F.2d 552 (1966), as indicating that this court considers military retirement pay to be compensation for past rather than continuing service. There is no merit in this assertion. In its broadest reading, *Wilkerson* holds that mili-

tary retirement pay received by a retiree who established his domicile in a community property state a few months before retirement is community property for purposes of the retirement income credit.

duty pay drawn after re-enlistment. With the impact of technology on military service a new incentive was felt necessary to induce re-enlistment of those who had acquired special skills important to the service. Congress authorized the armed services to provide such incentive by regulation. Pursuant to statute, certain skills were enumerated by regulation as entitled to Variable Re-enlistment Bonus (VRB) in addition to the Regular Re-enlistment Bonus (RRB) theretofore paid. By regulation it was provided that those enlisted men with such skills who re-enlisted or by contract extended the period of enlistment would be entitled to award of the VRB. It was provided, however, that the crucial date in determining entitlement to the award was the date of termination of the original enlistment and commencement of the new, or extended, enlistment. The serviceman must on that date be possessed of a special skill entitling him to the VRB.

Appellees in *Larionoff,* serving their original term of enlistment in the Navy, engaged in study to acquire a special skill enumerated among those entitling the possessor to a VRB. They entered into contracts extending their enlistments. Before their original terms of service had expired the Navy amended its list of qualifying skills to exclude the skills acquired by them, feeling that there was no longer any special need for such skills. Appellees sued, contending that this retroactively deprived them of a vested right to the VRB. The court of appeals agreed and the Supreme Court affirmed. Appellants here contend that if a right to the VRB there became vested at the time the contract extending enlistment was signed, their right to retirement pay vested at the time of retirement, the vesting carrying with it the method of computation then applying.

■ We cannot agree that *Larionoff* compels that result. There are several points of difference.[2] We rely on but one. In *Larionoff* the Court concluded that the VRB was earned when the serviceman had committed himself to an extension of his service. It was not a raise in pay to be earned as service was performed; it was a bonus, fully earned upon commitment. Here, as we have held, retirement pay does not differ from active duty pay in its character as pay for continuing military service. Statutory compensation of this sort for mil-

2. In *Larionoff* the Court did not reach any question of due process. It was involved in construction of the statute under which the service's regulations had been promulgated. It stated:

"The intention of Congress in enacting the VRB was specifically to promise to those who extended their enlistments that a VRB award would be paid to them at the expiration of their original enlistment in return for their commitment to lengthen their period of service. When Johnson made that commitment, by entering an agreement to extend his enlistment, he, like Larionoff, became entitled to receive at some future date a VRB at the award level then in effect (provided that he met the other eligibility criteria). Thus, unless Congress intended, in repealing the VRB program in 1974, to divest Johnson of the rights he had already earned, and constitutionally could do so, the prospective repeal of the program could not affect his right to receive a VRB, even though the date on which the bonus was to be paid had not yet arrived."

431 U.S. at 878–79, 97 S.Ct. at 2159. The Court concluded that Congress had no such intent and that the regulations having that ef-

fect were "contrary to the manifest purpose of Congress in enacting the VRB program, and hence invalid." *Id.* at 873, 97 S.Ct. at 2156.

The Court did note, however, that had Congress intended to divest Johnson of rights already earned, "serious constitutional questions would be presented." *Id.* at 879, 97 S.Ct. at 2159. We proceed on the assumption, arguendo, that if retirement pay had been fully earned at the date of retirement it could not be divested without compensation.

Further in *Larionoff,* the Court was not presented with a simple change in method of computation. There the benefit was cut off in its entirety. The case did, however, present a change in method. The old RRB and VRB were completely wiped out and supplanted by an SRB (Selective Re-enlistment Bonus). We do not know what, if any, difference in amount of incentive resulted as to any particular skill. All we know is that under the new regulations the particular skill in question was not entitled to any bonus at all. Here, retirement pay was not cut off. The right which appellants claim to have vested in them is a right to a method of computation, not the right to receive a set amount of compensation.

itary service can, under *Larionoff* be prospectively altered without offending the due process clause.

Judgment affirmed.