Franklin L. MILLER,
Plaintiff–Appellant,

v.

Thomas R. NEWBAUER; Jerry S. Klos;
William A. McKinnon; Kenneth J.
Sharp; and Walter Herbert, Defend-
ants–Appellees.

No. 87–6573.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 1, 1988.*

Decided Dec. 7, 1988.

Franklin L. Miller, Long Beach, Cal., in
pro per.

John F. Cordes and John C. Cruden, Civ.
Div., U.S. Dept. of Justice, Washington,
D.C., for defendants-appellees.

Before FLETCHER, ALARCON and
HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit
Judge:

Franklin L. Miller appeals *pro se* the
district court's grant of appellees' motion
for summary judgment. We have jurisdic-
tion pursuant to 28 U.S.C. § 1291, and we
affirm.

We review de novo a grant of summary
judgment. *Cohen v. Paramount Pictures
Corp.*, 845 F.2d 851, 852 (9th Cir.1988).
We must determine, viewing the evidence
in the light most favorable to the nonmov-
ing party, appellant here, whether there

---

* The panel finds this case appropriate for submis-
sion without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## I.

Appellant Miller, a former Air Force Reserve sergeant who is black, alleges that five Air Force Reservists, all of whom are white, improperly detained him at Norton Air Force Base on October 6, 1985. Miller and all five of the appellees at the time of the incident were members of the 445th Military Airlift Wing/Avionics Maintenance Squadron ("445th AMS"). Miller was a technician in the electrical shop, and appellees were his superior officers and supervisors.

Prior to October 6, 1985, Miller had been having problems in his unit for some time. In May of 1983 appellee Lieutenant Colonel Thomas Newbauer, appellant's unit commander, advised Miller to find a different reserve assignment because he had not been progressing satisfactorily in his present unit. Miller asked for and received a 90–day leave to look for a new position, but when the 90 days expired he failed to report for duty or to notify Newbauer of his status. As a result, Miller received an unexcused absence letter. On September 24, 1983, Miller confronted Newbauer in the presence of several witnesses and flew into a rage over the letter. He also asked Newbauer to "step outside" to fight.

In May of 1985 Miller failed several evaluations, and Newbauer again suggested that Miller find another unit. Miller did not attempt to do so. On September 8, 1985, appellee Master Sergeant Walter Herbert, Electrical Shop Chief, found Miller absent from his duty station without authorization and ordered him to return to the shop. Miller refused to comply and did not report to his unit. On that day Newbauer decided to give Miller an Article 15 (nonjudicial punishment) because of the refusal to obey his superior's command. Newbauer could not do so during that Unit Training Assembly ("UTA") because Miller left early without signing out. Newbauer then decided to give Miller a letter of reprimand for this action and to reduce him in rank for conduct unbecoming a technical sergeant and failure to meet standards of professionalism in his duties.

On October 5, 1985, Miller reported to duty and was told that he did not meet grooming standards because his mustache was out of compliance. At 12:00 p.m. on October 6, Miller injured his hand while working in the electrical shop. Herbert took Miller to the Norton AFB clinic. Miller was then taken to March AFB to see a doctor, and he was returned to Norton AFB by 3:00 p.m. He was released from the Norton AFB clinic at 3:10 p.m., but he did not report to his duty station as required.

After waiting for half an hour for Miller to return to his unit, Newbauer asked appellees Major Jerry Klos and Herbert to locate Miller because he wanted to initiate the disciplinary action. Herbert found Miller at about 4:20 p.m. as Miller was preparing to leave the base. At some time prior to 4:20 p.m. Miller had signed himself out without authorization.

Herbert told Miller that Newbauer wanted to see him, and under his own power Miller walked to the orderly room and reported to Newbauer. Also present were the other four appellees. Newbauer then gave Miller the letter of reprimand, a referral performance report, the notification of intent to demote, and an Article 15 for poor grooming standards. Newbauer read the Article 15 so Miller would understand what he was being advised to sign. No physical force was ever used, nor were any verbal epithets spoken by any of the appellees. Miller complained of pain from his injured hand, but could not explain why it took him seventy minutes to arrive from the clinic, a ten minute walk.

Miller refused to sign the Article 15, and he was released to go at 5:07 p.m. When he reported out he clicked his heels, saluted a non-USAF salute, and goose-stepped out of the office. On November 1, Miller was reassigned to the inactive Reserves. No disciplinary action was ever taken against him.

## II.

Miller brought a *pro se* action alleging common law causes of action in libel, slander, intentional infliction of emotional distress, and interference with an employment relationship. He also alleged violations of the 5th, 13th, and 14th Amendments and 42 U.S.C. § 1985 (1982). He sought 50 million dollars in damages.

Appellees moved for summary judgment, and the district court granted the motion. The court held that a service member may not maintain a lawsuit against his military superiors to recover damages for alleged common law torts, constitutional claims, or violations of 42 U.S.C. §§ 1985(1) or (3).

## III.

Miller's principal argument is that he and all five appellees were off duty at the time of the alleged incidents and had reverted to civilian status. He contends that the unit had been officially dismissed at 4:15 p.m., and that once a reservist has been dismissed, he cannot be called back at a superior officer's whim. Miller also points that all the parties are civilians for 326 days a year and are scheduled to perform as military personnel only 39 days a year; he maintains that this makes the parties essentially civilian personnel. As a result, appellant argues that the present lawsuit is strictly personal in nature and scope, and the doctrine of intra-military immunity does not apply.

The appellees contend that all the incidents alleged by Miller occurred during his Reserve Unit's Training Assembly at Norton Air Force Base. They argue further that any injuries Miller may have suffered occurred in the course of an activity incident to his military service, *i.e.,* the initiation of disciplinary action against him. Appellees point out that the normal duty hours for the 445th AMS are from 7:30 a.m. to 4:30 p.m.; the mere act of Miller's signing himself out before 4:30 p.m. neither caused him to revert to civilian status, nor prevented all military jurisdiction over him by his superior officers.

In an affidavit that was before the district court to support appellees' motion for summary judgment, Charles R. Dougherty, Jr., Training Administrator of the Personnel Division, United States Air Force Reserve Headquarters at the Pentagon, stated that the Air Force Reserve Commander has jurisdiction and control over a unit member during the entire duty day. According to Dougherty, the UTA duty day is defined by the UTA schedule, and the unit duty hours are established by the master training schedule, Air Force Form 1320.

Dougherty further explained that a member of the Air Force Reserve places himself under the jurisdiction and control of a unit commander just by reporting for duty at the beginning of the UTA. The Air Force Form 40 ("Form 40") on which the reservist signs in and out is not the sole determinant of the limits of the UTA duty day. The reservist's day may begin prior to sign-in and extend beyond sign-out, depending on the schedule of activities and decisions made by the unit commander.

Dougherty also stated that during a UTA, the requirements of the duty schedule must be met. A unit member is not automatically entitled to sign the Form 40 at the end of the duty day. A commander can prevent the reservist from signing the form for a number of reasons, such as failing to meet military standards of personal appearance. The commander can even cross out the reservist's name if the member fails to meet duty requirements; he can do so, for example, in the event of unauthorized absences.

Dougherty concluded that as Commander of Miller's Reserve Unit, Newbauer had the authority to recall or to retain Miller for disciplinary purposes after sign-out, as well to extend the UTA beyond the established hours. Because all of the defendants' acts of which Miller complains arose during the scheduled UTA or an appropriate extension thereof, or occurred in the course of activities incident to his military service on that UTA duty day, we agree with the district court that Miller's suit is barred by the doctrine of intra-military immunity.

## A.

■ It is well-settled that service members are precluded from maintaining a lawsuit to recover damages for common law torts that arise out of or occur in the course of activity incident to military service. *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). In *Mattos v. United States,* 412 F.2d 793 (9th Cir.1969), this court applied the *Feres* doctrine to preclude suits by active duty service members to suits by reservists against fellow reservists for injuries received while on reserve training. *Id.* at 794.

In *Stauber v. Cline,* 837 F.2d 395 (9th Cir.1988), a National Guard technician brought a state law tort action against other Guard members. Like Miller, Stauber sought to escape the *Feres* doctrine on the ground that his causes of action arose while he and the defendants were civilians. We held defendants immune from the suits because Stauber's claims arose "incident to service." *Id.* at 401. We found it significant that the conduct of the parties in *Stauber* was subject to military command structures and military discipline and that, as members of the National Guard, all the parties were under direct command of active duty military officers. *Id.* at 399–400.

We have no doubt that the *Feres* doctrine bars Miller's suit insofar as he seeks damages for alleged common law torts. All of the incidents that Miller alleges occurred during the Reserve Unit's Training Assembly at Norton Air Force Base. Any injuries Miller may have suffered occurred in the course of activity incident to his military service. Miller had not reverted to civilian status at the time of the incident. Newbauer had the ultimate authority to decide when the duty day ended, and he could recall or retain Miller for disciplinary purposes after sign-out.

## B.

The Supreme Court has extended the *Feres* doctrine to preclude constitutional damage suits between service members for injuries arising out of military service. In a unanimous opinion the Court held in *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), that "military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Id.* at 305, 103 S.Ct. at 2368; *see also United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550 (1987) (reaffirming *Chappell*). The Court stressed that *Feres* principles must guide an analysis of a constitutional tort damage case. One of those principles is that civilian courts must hesitate before taking on a suit that would require judicial tampering with the established relationship between military personnel and their superior officers. Miller's constitutional claims challenging his commanders' and supervisors' disciplinary decisions and actions are clearly of a type that "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Stauber,* 837 F.2d at 400.

Another reason the Supreme Court has applied *Feres* to constitutional tort actions between service members is that Congress has exercised its plenary constitutional authority over the military by enacting statutes regulating it, and has thereby taken into account the special problems that define the military structure. *Chappell,* 462 U.S. at 302, 103 S.Ct. at 2366. Congress has not provided a damages remedy for claims by military personnel whose constitutional rights have been violated by superior officers. Any action to provide a judicial response by way of such a remedy would be inconsistent with Congressional authority in this field. *Id.* at 304, 103 S.Ct. at 2367. Accordingly, summary judgment for appellees on Miller's constitutional claims was properly granted.

## C.

■ We turn next to appellant's claims that he is entitled to damages for acts by appellees allegedly in violation of the Civil Rights statutes. This court has stated that military subordinates have no remedy under 42 U.S.C. § 1985(1) against their military superiors. *Mollnow v. Carlton,* 716 F.2d 627, 632 (9th Cir.1983). The rationale

of *Chappell* and *Feres* guided that decision. A section 1985(1) action would strike directly at the unique military relationship deemed in those cases to be "peculiar and special." *Mollnow*, 716 F.2d at 631. Absent immunity, a section 1985(1) action would lie for calculated decisions made in the judgment and discretion of a superior military officer, at which point a civil jury would be called on to inquire into the nature of this uniquely military matter; damages might then be assessed against superior officers for the exercise of their judgment and discretion. *Id.* Such a result would offend the principles announced in *Chappell* that civilian courts must not intrude into the established relationship between military personnel and their superior officers. *Id.* The district court did not err in rejecting appellant's section 1985(1) claim.

### D.

■ Finally, we review the district court's conclusion, based on its analysis of *Feres, Mollnow,* and *Chappell,* that a service member cannot maintain a lawsuit to recover damages from a superior officer for violation of 42 U.S.C. § 1985(3). We note that the Supreme Court has expressly reserved decision on this issue. *Chappell,* 462 U.S. at 305 n. 3, 103 S.Ct. at 2368 n. 3. We agree with the district court that policies announced in these cases seemingly dictate that civilian courts should not interfere, by means of a section 1985(3) action, with the relationship established between a service member and his superior because that relationship "is at the heart of the necessarily unique structure of the military establishment." *Mollnow,* 716 F.2d at 631. We need not decide in this case, however, whether such an action by a service member against his superior officers is barred by intra-military immunity. We hold instead that Miller's section 1985(3) claim must be rejected because he failed to allege exhaustion of intraservice remedies.[1]

In *Chappell* the Supreme Court emphasized that Congress has established a comprehensive internal system of justice to regulate military life. 462 U.S. at 302–03, 103 S.Ct. at 2366–67. This system provides for the review and remedy of complaints and grievances such as those presented by Miller. The Uniform Code of Military Justice provides that a service member who believes himself wronged by a commanding officer may complain to the officer exercising court-martial jurisdiction over the officer against whom the complaint is made. 10 U.S.C. § 938 (1982). Proper measures for redressing the wrong can then be taken. 462 U.S. at 302–03, 103 S.Ct. at 2366–67.

■ More recently, in *Trerice v. Pedersen,* 769 F.2d 1398 (9th Cir.1985), we dismissed a section 1985(3) claim by the father of a service member killed aboard the Navy ship USS Ranger. We held that even if the requisite cause of action existed under the statute, the official actions complained of were not subject to judicial review: "As with Trerice's constitutional claims, the failure to allege exhaustion of intraservice remedies itself provides sufficient ground for the dismissal of the section 1985(3) claim." *Id.* at 1402. Miller must utilize the military's internal grievance procedures and exhaust these intraservice remedies before resorting to the civilian courts.[2]

The judgment of the district court is AFFIRMED.

---

1. Although the district court disposed of Miller's section 1985(3) claim on intra-military grounds, we can affirm on any basis fairly presented by the record. *See Mollnow,* 716 F.2d at 628 n. 1.

2. In their brief, appellees argue that Miller waived his section 1985(3) claim because he neither briefed it before this court, nor responded below to appellees' arguments in their motion for summary judgment that Miller had no basis for a section 1985(3) claim. Appellees cite *Ogden v. United States,* 758 F.2d 1168 (7th Cir. 1980), to support their waiver argument. If Miller were not *pro se,* we could affirm on that basis. We hesitate, however, to dismiss on technical grounds civil rights claims brought by *pro se* plaintiffs. *See, e.g., Karim–Panahi v. Los Angeles City Police Department,* 839 F.2d 621, 623 (9th Cir.1988) (civil rights pleadings filed by *pro se* plaintiff must be construed liberally).