**Arthur J. McGOWAN,**
**Plaintiff–Appellant,**

**v.**

**Gerald R. SCOGGINS; Richard B. Kloskinski; Harold V. Breiding; James A. Etheridge, Jr.; Ward R. Wilder; and Bruce Johnson, Defendants–Appellees.**

**No. 88–15055.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1989.

Decided July 26, 1989.

James W. Lewis, Sacramento, Cal., for plaintiff-appellant.

Mary L. Grad, Asst. U.S. Atty., Sacramento, Cal., for defendants-appellees.

Before SNEED, ALARCON and LEAVY, Circuit Judges.

ALARCON, Circuit Judge:

Professor Arthur J. McGowan, Jr., (Professor McGowan) appeals from the entry of a judgment dismissing his action against Sergeant Gerald R. Scoggins, Sergeant Richard B. Klosinski, Sergeant Harold V. Breiding, Captain James A. Etheridge, Jr., Lieutenant Colonel Ward R. Wilder, and Does I–X, inclusive, (hereinafter collectively the military officials). The complaint alleged states causes of action and a deprivation of rights protected from governmen-

tal interference by the Fourth, Fifth, Sixth, and Fourteenth Amendments.

The district court entered a judgment dismissing the action for lack of subject matter jurisdiction under the *Feres* doctrine.[1]  Professor McGowan filed a timely appeal.

We have jurisdiction because the dismissal of the action for lack of subject matter jurisdiction was a final judgment.  28 U.S.C. § 1291.  We review independently the question whether the *Feres* doctrine is applicable to the facts reflected in the record.  *Atkinson v. United States,* 825 F.2d 202, 204–05 (9th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988).

We must decide whether a retired army captain, discharged as permanently disabled due to combat injuries, who receives disability retirement pay monthly, is precluded from filing an action against military officers for harm suffered while entering a United States Air Force base to conduct a personal errand.  We conclude that the *Feres* doctrine is inapplicable to a claim filed by a person who is not a member of the armed forces of the United States for injuries that are not incident to current military service or who is not subject to the supervision of military personnel.  Accordingly, we reverse.

## I

The question presented in this matter is novel.  To answer it, we must first examine the reach and purpose of the *Feres* doctrine as explained by the Supreme Court and interpreted by the Court of Appeals.

Prior to the enactment of the Federal Torts Claims Act (FTCA) in 1946, 28 U.S.C. §§ 1346(b), 2671–2680, the United States, as a sovereign nation, was immune from civil liability for tortious acts committed by an employee of the government.  *Atkinson v. United States,* 825 F.2d at 204.  Under the FTCA, Congress waived immunity for the tortious conduct of employees of the Government including "a member of the

military or naval forces of the United States" acting "in line of duty."  28 U.S.C. § 2671.

## A. SUPREME COURT RESTRICTIONS ON CIVIL ACTIONS BY SERVICEMEN BASED ON THE CONDUCT OF OTHER MILITARY PERSONNEL

In 1949, the Supreme Court interpreted the FTCA to provide jurisdiction over a claim filed against the United States by members of the armed forces of the United States for injuries "not caused by their service."  *Brooks v. United States,* 337 U.S. 49, 52, 69 S.Ct. 918, 920, 93 L.Ed. 1200 (1949).  In *Brooks,* two brothers were in the armed forces of the United States when their vehicle was struck by a United States Army truck driven by a civilian employee of the Army.  One brother was injured and the other was killed.  *Id.* at 50, 69 S.Ct. at 919.  A claim was brought against the United States pursuant to the FTCA.

The district court denied the Government's motion to dismiss.  *Id.*  The Government argued that members of the armed forces of the United States at the time of their injuries are barred from recovery under the FTCA.  *Id.*  The Fourth Circuit reversed in a divided decision.  *United States v. Brooks,* 169 F.2d 840 (4th Cir.1948).  The Supreme Court reversed the Court of Appeals and held that the FTCA did not exclude all claims brought by members of the armed forces of the United States.  *Brooks,* 337 U.S. at 51, 69 S.Ct. at 919.

The Supreme Court answered the Government's concerns about the effect of permitting a member of the armed forces to bring an action against the United States in the following words:

> The Government envisages dire consequences should we reverse the judgment. A battle commander's poor judgment, an army surgeon's slip of hand, a defective jeep which causes injury, all would ground tort actions against the United States.  But we are dealing with an accident which had nothing to do with the

---

**1.** *Feres v. United States,* 340 U.S. 135, 71 S.Ct.    153, 95 L.Ed. 152 (1950).

Brooks' army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident incident to the Brooks' service, a wholly different case would be presented.

*Id.* at 52, 69 S.Ct. at 920 (footnote omitted).

In the year following its decision in *Brooks,* the Supreme Court was called upon to decide whether a member of the armed forces of the United States who received injuries while on active duty arising out of or in the course of such military duty may bring an action under the FTCA against the United States. *Feres,* 340 U.S. at 138, 71 S.Ct. at 155. In *Feres,* the Supreme Court reviewed three consolidated cases involving claims filed against the United States brought by or on behalf of persons who were members of the armed forces of the United States *on active duty* at the time they were injured. *Id.* at 136–37, 71 S.Ct. at 154–55. Two of the complaints involved claims of negligent medical treatment by army surgeons. *Id.* In the third matter, the complaint alleged that the decedent, while on active duty, died in a fire due to negligence in quartering him in unsafe army barracks without an adequate fire watch. *Id.* The Supreme Court noted that "[t]he common fact underlying the three cases is that each claimant, *while on active duty* and not on furlough, sustained injury due to negligence of others in the armed forces." *Id.* at 138, 71 S.Ct. at 155 (emphasis added).

The Supreme Court distinguished *Brooks* as follows: "The injury to Brooks did not arise out of or in the course of military duty." *Id.* at 146, 71 S.Ct. at 159. The Supreme Court concluded in *Feres* that "the Government is not liable under the Federal Tort Claims Act for injuries to *servicemen* where the injuries *arise out of or are in the* course of *activity incident to service." Id.* (emphasis added). The Court in *Feres* upheld the dismissal of two of the consolidated cases and ordered reversal of the Tenth Circuit's judgment in the third matter which held that a cause of action had been stated. *Id.*

In *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Supreme Court was presented with the following question: Does *Brook* or *Feres* apply to a claim against the United States by a veteran who was discharged because of an injury to his left knee for negligence in the subsequent treatment of the same knee by doctors in a Veteran's Administration hospital? *Id.* at 110–11, 75 S.Ct. at 142–43. The Supreme Court held that the claim was governed by *Brooks* and not *Feres. Id.* at 112, 75 S.Ct. at 143. The Court stated in support of its holding: "We adhere also to the line drawn in the *Feres* case between injuries that did and injuries that did not arise out of or in the course of military duty." *Id.* at 113, 75 S.Ct. at 143. The Court noted that "[t]he injury occurred after his discharge, while he enjoyed a civilian status." *Id.* at 112, 75 S.Ct. at 143.

The Court in *Brown* explicated the basis for its holding in *Feres* for barring claims by members of the armed forces of the United States as follows:

> The peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty, led the Court to read that Act as excluding claims of that character.

*Id.* (citation omitted).

In *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Supreme Court applied *Feres* to an FTCA action filed on behalf of the estate of an off-duty member of the United States Army against the United States for negligence in failing to exert control over another serviceman who murdered the decedent away from the base. *Id.* at 53–54, 105 S.Ct. at 3040–41. The district court granted the Government's motion for a summary judgment. *Id.* at 54, 105 S.Ct. at 3041. The Third Circuit reversed, holding that *Feres* did not apply to an action filed on behalf of an off-duty serviceman who was not on base or engaged in military

activity at the time of injury. *Shearer v. United States*, 723 F.2d 1102, 1108 (3rd Cir.1983).

The Supreme Court concluded that *Feres* was applicable because civilian courts lacked the authority to "second-guess military decisions" or impair "military discipline." *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042. The Court held further that the allegation of the complaint concerning the alleged negligent control "goes directly to the 'management' of the military; it calls into question basic choices about the discipline, supervision, and control of a *serviceman*." *Id.* at 58, 105 S.Ct. at 3043 (footnote omitted) (emphasis added).

In *United States v. Johnson*, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), the Supreme Court applied *Feres* to an FTCA claim brought against the United States by the widow of a Coast Guard helicopter pilot who died in a crash during a rescue mission. *Id.* at 682–83, 107 S.Ct. at 2064–65. The complaint alleged that a civilian air traffic controller of the Federal Administration Agency negligently caused her husband's death. *Id.* at 683, 107 S.Ct. at 2065. The district court dismissed relying on *Feres*. *Id.* The Eleventh Circuit reversed, holding that the *Feres* doctrine did not apply in an action against a civilian tortfeasor who is not in any way involved in military activities. *Johnson v. United States*, 749 F.2d 1530, 1537 (11th Cir.1986) (en banc) (per curiam). The Supreme Court reversed the Eleventh Circuit's judgment. The Court held that the *Feres* doctrine applies to injuries incurred incident to service regardless of the military status of the governmental employee. *Johnson*, 481 U.S. at 686–88, 107 S.Ct. at 2074–76. The Court reasoned as follows: "Even if military negligence is not specifically alleged in a tort action, a suit based upon *service-related activity* necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of a military mission." *Id.* at 691, 107 S.Ct. at 2069 (footnote omitted) (emphasis added). *Accord United States v. Lee*, 400 F.2d 558, 562 (9th Cir.1968) ("the status of the deceased or injured person con-

trols"), *cert. denied*, 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969).

In 1971, the United States Supreme Court held that a violation of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971).

In *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the Supreme Court applied the *Feres* doctrine to a *Bivens* action brought by enlisted members of the United States Navy against their commanding officer, four lieutenants and three noncommissioned officers. *Id.* at 297, 103 S.Ct. at 2364. The plaintiffs alleged that their federal constitutional rights were violated. *Id.* They complained that "because of their minority race [the officers] failed to assign them desirable duties, threatened them, gave them low performance evaluations, and imposed penalties of unusual severity." *Id.* The Supreme Court applied *Feres* to actions between members of the armed forces of the United States who challenge the decision of a superior officer because "centuries of experience have developed a hierarchical structure of discipline and obedience to command, unique in its application to the military establishment and wholly different from civilian patterns." *Id.* at 300, 103 S.Ct. at 2365. The court held that "enlisted military personnel may not maintain a suit to recover damages for alleged constitutional violations." *Id.* at 305, 103 S.Ct. at 2368 (footnote omitted).

In *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), the Supreme Court held that *Chappell* applies to a *Bivens* claim by a member of the armed forces of the United States for injuries that " 'arise out of or are in the course of activity incident to service.' " *Id.* at 684, 107 S.Ct. at 3064 (quoting *Feres*, 340 U.S. at 146, 71 S.Ct. at 159). The Court instructed that *Chappell* applied to service connected injuries although no officer-subordinate relationship existed. *Id.* at 680–681, 107 S.Ct. at 3061–62. The Court

also concluded that the same considerations that compel application of *Feres* to an FTCA cause of action apply to nonstatutory *Bivens* claims. *Id.*

## B. COMMON FACTORS PRESENT IN SUPREME COURT DECISIONS APPLYING *FERES*.

The Supreme Court has identified two common factors in each of the cases in which it has applied the *Feres* doctrine to FTCA and *Bivens* actions.

One. The injured person was a member of the armed forces of the United States at the time the injury was sustained. *Feres*, 340 U.S. at 138, 71 S.Ct. at 155; *Chappell*, 462 U.S. at 304, 103 S.Ct. at 2367; *Stanley*, 483 U.S. at 683–84, 107 S.Ct. at 3063–3064.

Two. The injury must arise out of or occur in the course of activity incident to military service. *Feres*, 340 U.S. at 138, 71 S.Ct. at 155; *Stanley*, 483 U.S. at 684, 107 S.Ct. at 3064; *Johnson*, 481 U.S. at 686, 107 S.Ct. at 2074.

The Supreme Court has applied the *Feres* doctrine in those cases where the cause of action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States. *Shearer*, 473 U.S. at 57, 105 S.Ct. at 3042.

The Supreme Court has recognized the jurisdiction of a federal court to consider the claim of a person who is a member of the armed forces of the United States for injuries that did not arise out of military activity. *Brooks*, 337 U.S. at 52, 69 S.Ct. at 920. In addition, the Supreme Court has determined that *Feres* is inapplicable to a civilian at a Veteran's Hospital who receives negligent treatment of a service-connected injury. *Brown*, 348 U.S. at 110–13, 75 S.Ct. at 142–44.

## C. APPLICATION OF THE *FERES* INTRAMILITARY IMMUNITY DOCTRINE IN THE NINTH CIRCUIT

### Injuries to Members of the Armed Forces Arising Out of or in the Course of Military Service.

The question whether a member of the Armed Forces of the United States can recover in an action against the Government for a governmental official's injuries arising out of or in the course of military service has been before this court in a number of cases. In *Knoch v. United States*, 316 F.2d 532 (9th Cir.1963), we decided that a reservist who was ordered to active duty for the sole purpose of submitting to a physical examination to determine if he was fit for active duty, was barred from filing a tort claim for an injury sustained during his physical examination because "his injury was incurred in the course of an activity incident to that service." *Id.* at 534.

In *Henninger v. United States*, 473 F.2d 814 (9th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973), we determined that a serviceman who sustained injuries while he was undergoing a physical examination as the last step in the discharge process was precluded from filing a claim because he was injured "while on active duty and not on furlough." *Id.* at 815 (quoting *Feres*, 340 U.S. at 138, 71 S.Ct. at 155). *Accord Madsen v. United States Ex Rel. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1013 (10th Cir.1987) (*Feres* doctrine applied to injuries received as a result of negligent treatment in an Army medical center by a military service member on terminal leave).

In *Callaway v. Garber*, 289 F.2d 171 (9th Cir.), *cert. denied*, 368 U.S. 874, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961), we applied the *Feres* doctrine to a claim filed by the widow of a recruiting officer in the United States Navy who was killed while operating his car on Navy business on a highway. His car collided with a car driven by a sergeant of the United States Air Force who was driving from his base to a special school at the Boeing Aircraft Plant in Seattle, Washington. We concluded that the injury to Callaway arose out of or in the course of activity incident to service. *Id.* at 173.

We have also concluded that members of the armed forces of the United States may not bring an action against the Government or service personnel for injuries that oc-

curred on a military base during activity under the control or supervision of a commanding officer.

In *Millang v. United States*, 817 F.2d 533 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988), we held that an off-duty military policeman who was suing for injuries suffered when he was run over by an on-duty serviceman at a picnic on site was barred from pursuing his claim against the United States because the "accident arose out of activity incident to service." *Id.* at 535. We concluded that the plaintiff enjoyed the use of a picnic area solely by virtue of his status as a serviceman. *Id.* We also noted that "the accident took place in an area under the complete control of the commanding officer of the air station." *Id. See Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir.1986) (the claim of an active duty member of the armed forces was properly dismissed where the injuries occurred in a canoe rented from the Navy Special Services Center which is under the direct responsibility and control of the commanding officer of the Naval Training Center). *See also Veillette v. United States*, 615 F.2d 505, 507 (9th Cir.1980) (medical treatment at a military hospital for an injury incurred from a motorcycle accident off-base is determined to be "incident to service" because military medical treatment is a benefit of military status); *Accord Woodside v. United States*, 606 F.2d 134, 136 (6th Cir. 1979), *cert. denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980) (injury occurred at air force sponsored flying club); *Chambers v. United States*, 357 F.2d 224, 229 (8th Cir.1966) (on-base swimming accident while on active duty); *Hass for Use and Benefit of United States v. United States*, 518 F.2d 1138 (4th Cir.1975) (accident occurred while riding horse rented from a military stable).

In *Preferred Insurance Company v. United States*, 222 F.2d 942 (9th Cir.), *cert. denied*, 350 U.S. 837, 76 S.Ct. 74, 100 L.Ed. 747 (1955), we held that damage to a serviceman's trailer located on a military base in an area "absolutely subject to military control and discipline," falls under "activity incident to service." *Id.* at 948.

In *Dexheimer v. United States*, 608 F.2d 765 (9th Cir.1979), we held that the *Feres* decision barred any FTCA claim brought by a member of the armed forces of the United States who was physically and sexually assaulted by other inmates while confined at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. *Id.* at 765. Dexheimer was sentenced to serve 18 months imprisonment and forfeiture of pay, and a bad-conduct discharge. *Id.* at 766. We held that Dexheimer was still a member of the armed forces of the United States when he was assaulted. *Id.* We also concluded that his injuries occurred "in the course of activity incident to service." *Id.* at 767.

In *Atkinson*, 825 F.2d at 205, a woman member of the armed services of the United States filed a malpractice action for injuries received for prenatal treatment in an Army hospital during the second trimester of her pregnancy. *Id.* We affirmed the dismissal of her claim because the injuries were "incident to service." *Id.* at 204 (quoting *Feres*, 340 U.S. at 146, 71 S.Ct. at 159).

## D. INTRAMILITARY IMMUNITY WAIVED WHERE INJURIES ARE NOT INCIDENT TO SERVICE.

As discussed above, in *Brooks*, 337 U.S. at 49, 69 S.Ct. at 918, the Supreme Court held that an action may be brought against the Government or governmental employees by or on behalf of a member of the armed forces of the United States for injuries that do not arise out of or in the course of military service. *Id.* at 52, 69 S.Ct. at 920. We applied *Brooks* in *Mills v. Tucker*, 499 F.2d 866 (9th Cir.1974) and *Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983). In *Mills*, a member of the United States Navy was killed in a traffic collision on a roadway maintained by the United States Navy adjacent to but not a part of the West Loch Naval Ammunition Depot. *Mills*, 499 F.2d at 867. Mills was stationed at Hickam Air Force Base. Mills' widow sued the Government for negligently maintaining the road. In a bench trial, the court found the Government liable. *Id.*

On appeal, the Government argued it was immune under the *Feres* decision because Mills' injuries arose out of or in the course of activity incident to service. *Id.* We held that Mills' injuries were not incident to his military service. *Id.* We noted that Mills was on furlough on the date of his injury. He was returning to his Navy owned quarters from a "moonlighting" civilian job. *Id.* We concluded that "[h]e was thus in the same situation as the serviceman in *Brooks*—only in the remotest sense subject to military discipline." *Id.*

In *Johnson*, 704 F.2d at 1433, a member of the armed forces was injured in an automobile accident on December 13, 1975. Johnson and Air Force Sergeant Timothy Hay were on active duty on the date of the accident. *Id.* During their off-duty hours they worked as bartenders at the Non-Commissioned Officers Club (NCO Club) on base. Under Montana law and military regulation, the NCO Club was required to close at 2:00 a.m. *Id.*

On December 13, 1975, Johnson and Hay checked out shortly before 2:00 a.m. but remained at the NCO Club to attend an after hours party. They consumed liquor until 4:30 a.m. The accident occurred one mile outside the base. Hays drove the car. Hays was determined to be legally intoxicated at the time of the accident. *Id.* Johnson filed an FTCA claim against the Government. The Government moved to dismiss under the *Feres* decision. The motion was denied. The civil court found that the proximate cause of the accident was the failure of Air Force personnel to close the NCO Club at 2:00 a.m. as required by Montana law and military regulation.

On appeal, the Government contended that Johnson's injuries were incident to military service. *Id.* at 1434. We held that "the occurrence of government negligence on a military base should not automatically bar recovery." *Id.* at 1437. We also distinguished " 'between those cases involving activities arising from life on the military reservation, and those in which the presence on the base has little to do with the soldier's military service.' " *Id.* (quoting *Parker v. United States*, 611 F.2d 1007,

1015 (5th Cir.1980)). We affirmed in Johnson after concluding that "Johnson's off duty work as a bartender bears no such relevant relationship to the military discipline structure that the *Feres* doctrine was meant to safeguard." *Id.* at 1438.

**E. OTHER NON–STATUTORY EXCEPTIONS TO THE WAIVER OF IMMUNITY FOR FTCA OR BIVENS CLAIMS.**

In *Johnson*, we explained that "the most persuasive justification for the *Feres* doctrine is the potential impact of civil suits on military discipline." *Johnson*, 704 F.2d at 1436. In this circuit, we have applied the *Feres* disciplinary rationale to claims filed by persons who were not members of the armed forces at the time the action was filed. In each case, we found that permitting the action to proceed would have an adverse effect on military discipline.

In *Monaco v. United States*, 661 F.2d 129 (9th Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982), Daniel J. Monaco and Denise E. Monaco filed an FTCA action against the United States. Daniel J. Monaco claimed that he was exposed to radiation while stationed at the University of Chicago on active military duty as a member of the Army Specialized Training Program. He was required to perform calisthenic exercises at the University's football field. During breaks he sat in the stadium seats. *Id.* at 130. During this time, the "Manhattan Project" was being conducted underneath the stadium. *Id.*

Daniel J. Monaco did not discover he had been exposed to radiation until July of 1971, long after he had been discharged from the military. At that time he was diagnosed as having radiation induced cancer of the colon. *Id.* Daniel J. Monaco alleged in his complaint that the Government had negligently exposed him to radiation. *Id.* Denise E. Monaco filed a separate complaint alleging that exposure to radiation induced chromosomal and genetic changes in her father that caused her to be born with a birth defect. *Id.*

The district court dismissed both actions on the authority of *Feres*. *Id.* at 130–131. We affirmed. We rejected Daniel J. Monaco's argument that his injury was the cancer, rather than his exposure to radiation. *Id.* at 132–133. We held that the Government's negligence occurred while he was on active duty. *Id.* at 133. Thus, his claim that the Government was negligent implicated a command decision. Permitting him to pursue a civilian court action would have a negative effect on military discipline. *Id.* We also determined that the fact that Daniel J. Monaco was now a civilian did not lessen the significance of "the concerns surrounding suits in the peculiar command relationship in the military." *Id.* We noted further that "[c]ourts have consistently denied claims of former military personnel, or of their wives or children who were never in the military." *Id.*

We upheld the dismissal of Denise E. Monaco's claim on the same grounds. We held that the negligent act that caused her birth defect occurred while her father was a member of the armed forces of the United States. *Id.* Denise E. Monaco argued that the *Feres* decision was inapplicable to her because she was never a member of the armed forces. *Id.* We concluded that the Government's negligence occurred while her father was on active duty. Accordingly, a trial on her claim would entail an examination by a civilian court of the Government's activities with respect to service personnel. *Id.* We commented in respect to this issue: "It is precisely this type of examination the *Feres* doctrine seeks to avoid." *Id.* at 134.

In *Broudy v. United States*, 661 F.2d 125 (9th Cir.1981), we suggested that a civilian might be able to state a cause of action for injuries suffered by her husband resulting from exposure to radiation while he was a member of the armed forces, if the evidence showed that the Government learned of the danger *after* he left the service and failed to warn him. *Id.* at 128–29.

In *Stauber v. Cline*, 837 F.2d 395 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988), the plaintiff and each of the defendants were mechanics employed by the Alaska Army National Guard. As a condition of their civilian employment, they were required to be members of the National Guard. *Id.* at 396. Each of the parties worked in an on-base National Guard Maintenance Shop.

Stauber filed an action in state court for intentional infliction of emotional distress and libel. The defendants removed the matter to federal court on the ground that they were federal officers acting under color of federal authority. *Id.* at 396–97.

The jury awarded Stauber compensatory and punitive damages. In a post-trial motion, the defendants claimed that the court lacked subject matter jurisdiction under *Feres*. *Id.* We affirmed.

On appeal, Stauber argued that *Feres* was inapplicable because the claims arose while he and defendants were serving as civilian employees. *Id.* at 399. We concluded that because the record showed that "in their work Stauber and the defendants were always under the command of active-duty military officers" the doctrine of intramilitary immunity applied. *Id.* at 400. In support of the holding, we stated: "To examine the relationship between on- and off-base events in this case, beyond determining that the conduct was incident to service, would result in an impermissible intrusion upon military matters." *Id.* (footnote omitted).

We applied *Stauber* in *Miller v. Neubauer*, 862 F.2d 771 (9th Cir.1988), to an action brought by a member of an Air Force Reserve Unit. Miller sought to escape the *Feres* doctrine by arguing that he had completed his reservist duty before disciplinary action was initiated against him. We concluded that the action was barred by the doctrine of intramilitary immunity because the injuries allegedly suffered by Miller occurred as an incident to his military service and prior to the time he and his commanding officers reverted to a civilian status. *Id.* at 774.

In a recent case, *Norris v. Lehman*, 845 F.2d 283 (11th Cir.1988), the Eleventh Circuit applied *Feres* to a *Bivens* action filed by a civilian in a unique factual setting.

Norris retired from active duty with the United States Navy with the rank of Chief Petty Officer. In 1969, after his retirement, he received certification by the Chief of Naval Education to serve as a Naval Junior Reserve Officer Training Corps (NJROTC) instructor in public schools. *Id.* at 284. Norris was hired as an Assistant Naval Science Instructor at a high school in Florida for fourteen years.

On April 21, 1982, Captain Marwood Lewis, the officer responsible for conducting the NJROTC program revoked Norris' certification to teach effective August 16, 1982. Norris was sixty years old at that time. *Id.* at 285. Norris filed a claim in the district court alleging age discrimination and due process violations. This complaint was later amended to allege a cause of action under *Bivens* against the Secretary of the Navy, Rear Admiral Kenneth Shugart, and Captain Lewis. The district court dismissed the action against the Secretary of the Navy and the naval officers under *Chappell. Id.* at 285–86. The Eleventh Circuit affirmed. The Court of Appeals concluded that "the decision to decertify ... was a military one." *Id.* at 286. The court reasoned as follows: "while it may be true that Norris was nominally a civilian at the time, the relationship between him and Captain Lewis, in its very essence, was a *military supervisory relationship." Id.* at 287 (footnote omitted) (emphasis added). The court stated, "We conclude that any injury he suffered ... arose out of or was in the course of activity incident to service." *Id.* at 287.

## II

In reviewing an order dismissing an action for lack of subject matter jurisdiction, we must accept all of the plaintiff's factual allegations as true. *Atkinson,* 825 F.2d at 204 n. 2 (citation omitted). In his memorandum in opposition to the motion to dismiss, Professor McGowan set forth the following facts. McGowan is a Professor of History at the University of California at Davis. He served in the United States Army for 12 years. He was wounded in combat during the Vietnam War, where he served for four years. He received a permanent medical discharge, over his protest, for a disability classification exceeding seventy percent (70%). Since that time, Professor McGowan has received a disability retirement check every month.

On October 27, 1986, McGowan went to the Mather Air Force Base to obtain a new parking decal for his personal automobile. While he was standing in line outside the Visitor's Center, a gate guard, Sergeant Gerald R. Scoggins, began to stop traffic in the incoming lane. Sergeant Scoggins shouted over his shoulder. His voice was inaudible to Professor McGowan because a helicopter was hovering at a low altitude in the immediate area. An unidentified woman Air Force member told Professor McGowan and the others standing in line that Sergeant Scoggins wanted them to go inside because there was possible danger outside. Everyone, including Professor McGowan, then crowded into the Visitor's Center.

About ten minutes later, Sergeant Scoggins came to the Visitor's Center. He asked Professor McGowan to step outside. Sergeant Scoggins berated Professor McGowan for disobeying his orders. Professor McGowan tried to explain that he could hear nothing over the helicopter noise. Sergeant Scoggins then went inside and returned with Captain James A. Etheridge, Jr. Captain Etheridge ordered Sergeant Richard B. Klosinski to arrest Professor McGowan.

Professor McGowan was taken to a security police office where, over a loud speaker system, he heard Lieutenant Colonel Azuma, the Deputy Base Commander, order that Professor McGowan be released. Professor McGowan was not released. Sergeant Scoggins continued questioning him. Professor McGowan requested an attorney after being advised of his *Miranda* rights. Professor McGowan was then placed in a holding room of the security police squadron headquarters. Shortly thereafter Professor McGowan heard a voice over the speaker ordering that Professor McGowan be released. Professor McGowan was asked if he would speak to

Lieutenant Colonel Ward R. Wilder. Professor McGowan was then advised he could leave.

Professor McGowan returned to the Visitor's Center to obtain a visitor's pass. Professor McGowan went to the security police squadron building to inform them that he intended to go to the base commander's office. Sergeant Harold V. Breiding and Sergeant Klosinski detained him again, however, and ordered Professor McGowan to show his visitor's pass. Sergeant Breiding and Sergeant Klosinski made some changes on the pass and then released Professor McGowan.

Before he could leave, Professor McGowan was seized by two armed men. Professor McGowan was forcibly pulled back inside the security police building. He was physically assaulted and his eyeglasses were knocked off his face and fell to the cement. At that time, a third command was made over the loud speaker system to release Professor McGowan. He was released.

As Professor McGowan was approaching his car, Lieutenant Colonel Ward R. Wilder yelled, "Get him back in here." Three security policemen led by Sergeant Klosinski, armed with loaded pistols, surrounded Professor McGowan's car. An unidentified W.A.F. pointed a loaded M–16 rifle directly at Professor McGowan at close proximity. Professor McGowan was taken to Lieutenant Colonel Wilder's office. Lieutenant Colonel Wilder held Professor McGowan for questioning after telling someone on the telephone that Professor McGowan had been released. Lieutenant Colonel Wilder then ran at Professor McGowan, starting approximately fifteen to twenty feet away, with his fists raised. Over two and one half hours after his initial arrest, Professor McGowan was permitted to make a report to the base commander.

Professor McGowan filed this action in the Superior Court of the State of California. The defendants removed the action to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1442(a)(1). Thereafter, the military officials filed a motion to dismiss, or in the alternative, a motion for summary judgment.

The district court granted the motion to dismiss. In the court's order dismissing the action, the court held that Professor McGowan's injuries "occurred because of his military relationship with the government." C.R. 16. The court stated that "[r]etirement pay does not differ from active duty pay in its character as pay for *continuing* military service." *Id.* (quoting *Costello v. United States,* 587 F.2d 424, 427 (9th Cir.1978), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979)). The district court also observed that as a retired officer Professor McGowan was subject to the Uniform Code of Military Justice. The court noted further that "[e]ven a disabled officer remains subject to recall in some capacity in the event of a mobilization emergency." C.R. 16.

### III

Professor McGowan is a civilian teacher of History at the University of California at Davis. He has not been a member of the armed forces of the United States Army for many years. Professor McGowan was visiting Mather Air Force Base on a personal errand for the purpose of obtaining a parking decal when he was subjected to assault and battery, false arrest and imprisonment, intentional and negligent infliction of emotional distress by military personnel.

As discussed in Part I, *supra,* intramilitary immunity under *Feres* applies to members of the armed forces of the United States who are injured as an incident to their current military service. *Feres,* 340 U.S. at 138, 71 S.Ct. at 155. Unlike the plaintiffs in each of the cited cases, Professor McGowan is not a member of the armed forces of the United States nor did he go to the Air Force Base to report for active military duty. *Contrast Knoch,* 316 F.2d at 533 (a person who reports to a military installation for active duty may not bring an action based on the negligence of military personnel). The *Feres* decision cannot act as a bar to the maintenance of this action because Professor McGowan was

not a member of the armed forces of the United States.

We are not persuaded by the military officials' argument that *Feres* and its Supreme Court progeny are applicable because as an honorably discharged retired army officer, Professor McGowan is subject to recall "in the event of military mobilization." Brief for Appellees at 12. The possibility that Professor McGowan some day may be recalled is not proof that he is an active member of the armed forces of the United States. If Professor McGowan had been recalled and was reporting for duty at Mather Air force Base, the resolution of this matter would require a different analysis. That question is not before us.

The military officials' alternative argument that Professor McGowan can be considered an active member of the armed forces for the purpose of applying the *Feres* decision, because he is receiving monthly disability retirement pay is equally unconvincing. The cases cited by the appellees are not relevant to the present matter. None of them discusses the question of intramilitary immunity concerning claims filed by an honorably discharged officer for conduct that occurred after he left military service. In *United States v. Tyler*, 105 U.S. 244, 26 L.Ed. 985 (1882), the Supreme Court considered the rights of a retired officer to periodic pay increases under a statute permitting such payment to persons still in the military service. *Id.* at 245. The decision in *Costello v. United States*, 587 F.2d 424 (9th Cir.1978), is another case of statutory construction regarding cost of living increases for persons receiving military retirement pay. *Id.* at 425. *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), involves the unrelated question whether retirement pay is subject to state community property laws. *Id.* at 220–23, 101 S.Ct. at 2735–36.

In fact, receipt of military pay is a false issue. The Supreme Court has allowed claims against the United States by members of the armed forces who are receiving monthly pay for current active duty, if the action is not based upon injuries received as an incident to military service. *Brooks*, 337 U.S. at 52, 69 S.Ct. at 920; *Brown*, 348 U.S. at 112, 75 S.Ct. at 143. It is clear from these cases that the receipt of monthly pay for past or present military duty is not dispositive of the question whether intramilitary immunity bars a claim. In *Brooks*, the Supreme Court stated that "[p]rovisions in other statutes for disability payments to servicemen, and gratuity payments to their survivors, ... indicate no purpose to forbid tort actions under the Tort Claims Act." 337 U.S. at 53, 69 S.Ct. at 921. Professor McGowan's claims cannot be barred on the ground that he receives a monthly disability retirement check.

We also reject the military officials' argument that Professor McGowan was injured as an incident to service because the right to get a parking decal is "a privilege conferred on him by virtue of his military status." Brief for Appellees at 16. It is true that Professor McGowan would not be entitled to a parking decal but for the fact he formerly served as an officer in the armed forces of the United States Reserve.

Professor McGowan's right to a parking decal, however, is a benefit he enjoys because of his *past* service in the military. Those cases that have held that a person is barred from pursuing a claim based on harm incurred while enjoying a benefit incident to military service involve members of the armed forces of the United States who were on active duty at the time of the injury. *See Millang*, 817 F.2d at 535 (serviceman injured at a picnic area on a military base); *Bon*, 802 F.2d at 1095 (serviceman injured while using a canoe rented from Navy); *Veillette*, 615 F.2d at 507 (serviceman received military medical treatment). Professor McGowan was not at Mather Air Force to enjoy a benefit that was incident to *current* military service.

As analyzed above, a claim may be barred under the intramilitary immunity doctrine if the action brings into question command or personnel decisions by military personnel, notwithstanding the fact that the plaintiff is a civilian. In each of these

cases, as set forth in Part I–E, the injured person was working under the direct supervision of military personnel. *Stauber*, 837 F.2d at 396 (civilian employees of the National Guard); *Norris*, 845 F.2d at 286 (NJROTC instructor whose work was under the direct control of naval officials).

Professor McGowan was not employed at Mather Air Force Base. His work as a history teacher at the University of California at Davis is not subject to military supervision, command, or discipline. While on a military base, he is subject to the same regulations that govern the conduct of any other civilian visitor. Professor McGowan, while standing in line at the Visitor's Center to get a parking decal was under "compulsion of no orders or duty and on no *military* mission." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159 (emphasis added). The injuries Professor McGowan sustained while attempting to get a parking decal were not incident to his former military service "except in the sense that all human events depend upon what has already transpired." *Brooks*, 337 U.S. at 52, 69 S.Ct. at 920. Professor McGowan's "presence on the base [had] little to do with [his prior] military services." *Johnson*, 704 F.2d at 1437. Because Professor McGowan's claims are directed against military officials who have no supervisory control over his civilian employment, they are not subject to dismissal for lack of subject matter jurisdiction under the intramilitary immunity doctrine.

The judgment is REVERSED.

SNEED, Circuit Judge, concurring in the judgment:

This is a closer case than Judge Alarcon's opinion indicates. The incident took place on a military base and involved active duty military personnel, and its resolution will require an evaluation of the manner in which these personnel performed their respective duties, including that of the base commander, in the light of the obligations imposed upon them by military regulations and orders. I assume, as does Judge Alarcon, that a civilian having no ties with the military would not be barred by *Feres v.*

*United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), from bringing suit against the United States on the claim Professor McGowan has stated. The issue, therefore, is whether Professor McGowan should be treated as if he had no ties to the military when in fact he does have some such ties. These latter ties, however, do not suggest that Professor McGowan's active duty status is either imminent or even probable. Under these circumstances, I am prepared to treat him as a civilian.

Therefore, I concur in the judgment reached by the majority.