884 F.2d 1350
 Sandra DURANT, Personally and on Behalf of the Heirs at Law
of Charles N. Durant, Deceased, and Sandra Durant, as
Administratrix of the Estate of Charles N. Durant, Deceased;
and James E. Tassin, Plaintiffs-Appellants,
v.
James NENEMAN, Defendant-Appellee.
 Nos. 88-1615, 88-1617.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 11, 1989.
 
 Steven Hornbaker (Craig J. Altenhofen, with him on the briefs), of Harper, Hornbaker & Altenhofen, Chartered, Junction City, Kan., for plaintiffs-appellants.
 Paul Hasty, Jr. (Jeffrey L. Lauersdorf, with him on the brief), of Wallace, Saunders, Austin, Brown & Enochs, Chtd., Overland Park, Kan., for defendant-appellee.
 Before LOGAN, MOORE, and EBEL, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Plaintiffs Sandra Durant and James E. Tassin appeal from an order dismissing their complaints for damages. Ms. Durant, widow of Charles N. Durant, and Mr. Tassin claimed the negligence of defendant James Neneman caused the death of Mr. Durant and injuries to Mr. Tassin. Plaintiffs filed a civil action in the United States District Court for the District of Kansas, asserting diversity jurisdiction.[1] Albeit reluctantly, the court dismissed the complaints believing the result was compelled by Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). We disagree and reverse because this is not the type of case to which Feres applies.
 
 
 2
 The immunity established in Feres attaches only when an action has been brought against the government under the Federal Tort Claims Act. While policy reasons underlying Feres and its progeny also provide an immunity for military actors, the conditions which give rise to the application of that immunity are not present in this case. We hold that this intra-military immunity should not be applied to shield military personnel from common-law actions based on their nonmilitary conduct.
 
 
 3
 The underlying allegations of fact in this case are simple. At the time of the incident, both Mr. Durant and Mr. Tassin were engaged in a physical training exercise, apparently in military formation, running on a street on the Fort Riley, Kansas, military base. Plaintiffs claim that Mr. Neneman, in uniform and driving his private vehicle, ran into both Mr. Durant and Mr. Tassin.[2] Mr. Durant died as a result of his injuries, but Mr. Tassin recovered.
 
 
 4
 Plaintiffs subsequently filed separate civil actions against Mr. Neneman solely in his individual capacity upon theories of negligence. Defendant moved to dismiss the actions on the ground that the complaints failed to state claims because he is immune from suit. Defendant argued that because the injured parties were soldiers engaged in military activity at the time of the accident, Feres required dismissal.
 
 
 5
 The trial court agreed. The district court held that because the injured parties were engaged in military activity at the time they were allegedly struck by the defendant, Feres required dismissal of the action. This conclusion was prompted by the holding in United States v. Johnson, 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), that the military status of the tort-feasor is irrelevant in the Feres analysis. Not only do we believe Feres inapposite, we also think the trial court's reliance upon the Johnson principle was incorrect.
 
 
 6
 To explain our reasoning, we must first turn briefly to Feres. The case was actually three separate actions under the Federal Tort Claims Act (FTCA) for damages. Common to each case was the "fact underlying the three cases ... that each claimant, while on active duty and not on furlough, sustained injury due to negligence of others in the armed forces." Feres, 340 U.S. at 138, 71 S.Ct. at 155. The Court concluded "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146, 71 S.Ct. at 159.
 
 
 7
 From this holding stems the first of what we recognize as two prongs of a doctrine of immunity which courts have come to call "the Feres doctrine." The first prong consists of those cases in which a plaintiff connected with the military asserts liability against the United States under the FTCA for injury arising out of activity which is incident to service. These are true Feres cases, and in an unbroken line from Feres, courts have granted immunity to federal defendants upon Feres rationales.
 
 
 8
 The second prong consists of those cases in which liability is asserted by servicemen against military actors for acts committed within the context of military service. From these cases has developed what we refer to as "the doctrine of intra-military immunity." While courts employ Feres rationales in applying intra-military immunity, it cannot be said accurately these are true Feres cases because the claims asserted are not founded upon the FTCA and the liability of the United States is not implicated. We believe this is an important distinction too often blurred, yet necessary to a reasoned analysis of the doctrines of immunity which flow from Feres. We therefore eschew reference to the second prong as "Feres doctrine cases." Nevertheless, the concept of intra-military immunity does have its roots in part of the rationale of Feres.
 
 
 9
 Feres is grounded upon three broad rationales.[3] First, "[t]he relationship between the government and the members of its armed forces is 'distinctively federal in character.' " Feres, 340 U.S. at 143, 71 S.Ct. at 157 (quoting United States v. Standard Oil Co. of Cal., 332 U.S. 301, 305, 67 S.Ct. 1604, 1607, 91 L.Ed. 2067 (1947)). Second, "statutory veterans' benefits 'provid[e] an upper limit of liability for the Government as to service-connected injuries.' " Johnson, 481 U.S. 681, 690, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (quoting Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666, 673, 97 S.Ct. 2054, 2059, 52 L.Ed.2d 665 (1977)). Third, suits by a service member against the government "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." United States v. Shearer, 473 U.S. 52, 59, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985).
 
 
 10
 The doctrine of intra-military immunity is an outgrowth of the third Feres rationale that decries the propriety of civilian courts delving into military matters and calling to bar military decisions and institutions. Illustrative is Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), the seminal case applying the doctrine of intra-military immunity. In Chappell, the Court considered a claim for damages by enlisted military personnel against their superior officers. The plaintiffs alleged the officers violated plaintiffs' constitutional rights and discriminated against them on account of race. The Court, guided by Feres rationale, refused to allow application of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to create a constitutionally founded claim by a soldier against his commander. The court stated:
 
 
 11
 The special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by military personnel, would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command. Here, as in Feres, we must be concern[ed] with the disruption of "[t]he peculiar and special relationship of the soldier to his superiors" that might result if the soldier were allowed to hale his superiors into court.
 
 
 12
 Chappell, 462 U.S. at 304, 103 S.Ct. at 2367. In accord with Chappell, courts have granted immunity to persons whose military authority is the basis for a plaintiff's claim of liability. See Miller v. Newbauer, 862 F.2d 771 (9th Cir.1988); Bois v. Marsh, 801 F.2d 462 (D.C.Cir.1986); Trerice v. Summons, 755 F.2d 1081 (4th Cir.1985). Additionally, courts have also extended intra-military immunity to persons not actually supervising the plaintiff, but nonetheless exercising military responsibility. See Stauber v. Cline, 837 F.2d 395 (9th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988) (defendants were plaintiff's coworkers); Hass v. United States, 518 F.2d 1138 (4th Cir.1975) (defendants were civilian employees who operated a stable for military purposes); Mattos v. United States, 412 F.2d 793 (9th Cir.1969) (defendant was same rank as injured person but driving the truck in which party was riding during a military exercise). In the cases rejecting liability of military commanders or persons exercising purely military functions, the courts have generally expressed concern for preserving the harmonious relationships within the military establishment. For the same reason, courts have been reluctant to entertain civil rights actions involving military personnel. Miller v. Newbauer, 862 F.2d 771 (9th Cir.1988); Bois v. Marsh, 801 F.2d 462 (D.C.Cir.1986); Martelon v. Temple, 747 F.2d 1348 (10th Cir.1984), cert. denied, 471 U.S. 1135, 105 S.Ct. 2675, 86 L.Ed.2d 694 (1985). Thus, our evolving jurisprudence has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts. It is our conclusion, however, that this zone was never intended to protect the personal acts of an individual when those acts in no way implicate the function or authority of the military. We can find nothing that would dictate a contrary conclusion.[4]
 
 
 13
 We find most helpful the reasoning of the Eighth Circuit in Brown v. United States, 739 F.2d 362 (8th Cir.1984), cert. denied, 473 U.S. 904, 105 S.Ct. 3524, 87 L.Ed.2d 650 (1985). In deciding whether intra-military immunity would be granted to certain defendants, the court focused upon the nature of the defendants' conduct.
 
 
 14
 In Brown, plaintiff's son, a black soldier, was subjected to a mock lynching by several noncommissioned officers while he attended an off-duty party. Plaintiff sued the United States, the soldiers who participated in the lynching episode, and the commanding officer for civil rights violations. While upholding the dismissal of the action against the United States and the commanding officer on Feres grounds, the court held the individual soldiers subject to suit. The court determined the most appropriate aspect of liability is the "military purpose or mission" of those acts. Brown, 739 F.2d at 368. Looking at the actions of the defendant noncommissioned officers, the court stated: "The activity that is at issue in this claim is of a distinctly non-military nature: the alleged participation of a group of men at a holiday weekend drinking party in the mock lynching of a young black man." Brown, 739 F.2d at 369. In taking this focus, the court recognized neither the institution of the military itself nor the exercise of command authority was implicated in the defendants' alleged actions. Thus, immunity was not required. We endorse this view.
 
 
 15
 While civilian courts have a legitimate concern for protecting the harmony of the military establishment to prevent an erosion of discipline, we do not believe this concern should be extended to claims that arise outside the military function. When a soldier commits an act that would, in civilian life, make him liable to another, he should not be allowed to escape responsibility for his act just because those involved were wearing military uniforms at the time of the act. When military personnel are engaged in distinctly nonmilitary acts, they are acting, in effect, as civilians and should be subject to civil authority. Mindful of the Supreme Court's observation in Feres that courts should not create causes against the military when they have not been recognized in the past, we nonetheless believe that common-law actions between military persons for distinctly nonmilitary acts break no new ground. Except for the penumbra of Feres, there would be no question that the defendant in this case could be called to task for his alleged acts. The only question is whether he was performing a military act at the time of the incident.
 
 
 16
 The issue thus devolves into whether the act of driving to his duty station was a military act. We think not. If one were to view this question as synonymous with whether the act of driving was "incident to military service," the answer would have to be different.[5] Indeed, it is hard, if not impossible, to decide at what point actions leading to the performance of a military task are not incidental to that end. Yet, if one focuses on the military purpose or mission of the defendant's conduct precipitating plaintiff's claim in the context of a need to protect military integrity, harmony, or authority, one must decide the mere act of driving to work, without more, is not the performance of a military act.
 
 
 17
 In our judgment, the trial court erred in dismissing the causes on immunity grounds. We hold that within the peculiar circumstances of this case, the act out of which defendant's alleged negligence arose was not a military act; hence, the defendant was not entitled to a claim of military immunity. The judgments of the district court are REVERSED AND REMANDED for further proceedings.
 
 
 
 [1]
 Mr. Tassin also asserted federal question jurisdiction. It is claimed in Mr. Tassin's complaint that he is a "citizen" of the State of Kansas. In Ms. Durant's complaint, filed by the same law firm, it is averred that defendant Neneman is a "citizen" of the State of Kansas. We, consequently, make no determination whether Mr. Tassin's assertions of diversity or federal question jurisdiction are valid
 
 
 [2]
 It is undisputed that Mr. Neneman was on his way to his duty assignment at the time of the incident
 
 
 [3]
 We reiterated these rationales in a recent application of the Feres doctrine, Shaw v. United States, 854 F.2d 360, 362 (10th Cir.1988)
 
 
 [4]
 The district court relied upon Johnson to support its conclusion that the military nature of the tort-feasor's conduct is irrelevant to whether he may be sued by a soldier. Yet, Johnson holds only that a soldier may not sue the government even if the government employee who caused an injury was not in military service. The Court in no way dealt with the circumstances under which one soldier may sue another. Moreover, even though Johnson is supported by all three Feres rationales, only the military discipline rationale applies to intra-military immunity. As the Court noted: "[M]ilitary discipline involves not only obedience to orders, but more generally duty and loyalty to one's service and to one's country. Suits brought by service members against the Government ... have the potential to undermine military discipline in the broadest sense of the word." Johnson, 481 U.S. at 691, 107 S.Ct. at 2069. We fail to perceive how an action against a soldier who was not engaged in military conduct can threaten military discipline. Because Johnson deals only with a suit by a soldier against the United States, its holding is inapposite to this case
 
 
 [5]
 We distinguish this case from Shaw where we held that an injury sustained while driving to one's place of duty was an injury incident to military service. Shaw is a classic Feres case which applies the strict rationales Feres mandates. As we have already noted, intra-military actions giving rise to the issue of military immunity are judged by different standards