[No. 24446–9–I.   Division One.   February 4, 1991.]

SHELLY M. GENNOE, *Appellant*, v. JACK E. SYPOLT,
ET AL, *Respondents.*

*Robert A. Izzo,* for appellant.

*Paul S. Ritchie,* for respondents.

RINGOLD, J.*—The plaintiff, Shelly M. Gennoe, appeals the trial court's order dismissing this action. The trial court held that: (1) the defendant, Jack Sypolt, and Gennoe were both military personnel; (2) the actions complained of arose out of that employment situation; and (3) the "*Feres* Doctrine" (*Feres v. United States,* 340 U.S. 135, 95 L. Ed. 152, 71 S. Ct. 153 (1950)) stripped the civil courts of subject matter jurisdiction in an intramilitary tort action. We affirm.

Shelly Gennoe and respondent Jack Sypolt were both members of the United States Army and were assigned to an Army recruiting office in Seattle. Their association developed into an acrimonious relationship. Gennoe alleges that Sypolt instigated an Army investigation of her for alleged drug use. Sypolt answers that he merely testified in the investigation. Gennoe was cleared of the charges but was subsequently transferred. Gennoe states that during this investigation, and later, she received numerous harassing phone calls which were traced to Sypolt's residence. Gennoe further asserts that Sypolt defamed her character by informing co-workers that she was "a homosexual, drug abuser and . . . traded sexual favors with commanding officers."

Gennoe filed a criminal complaint against Sypolt in the Renton Municipal Court for the telephone harassment, but Sypolt was acquitted. Gennoe then filed the present civil action for defamation and an unnamed tort arising out of the telephone harassment. The matter was set for mandatory arbitration and an award of $18,600 was entered for Gennoe. Sypolt requested a trial de novo.

After the arbitration proceedings Sypolt's counsel passed away and was replaced by present counsel, who sought leave to amend the answer to allege the *Feres* Doctrine as a

---

*Judge Solie M. Ringold is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

challenge to the court's jurisdiction. Leave to amend was granted and Sypolt's subsequent motion to dismiss based on lack of jurisdiction was granted by the trial court. This appeal timely followed.

### TIMELY CHALLENGE TO JURISDICTION

■ Gennoe presents two assignments of error on appeal. The first is that the trial court erred in allowing Sypolt to amend the answer to raise the *Feres* Doctrine issue. The *Feres* Doctrine has been held to be "tantamount to a limitation of subject matter jurisdiction", *Stauber v. Cline*, 837 F.2d 395, 399 (9th Cir.), *cert. denied*, 488 U.S. 817 (1988). The timing of its raising is not material. A challenge to the jurisdiction of the court can be raised at any time. *See, e.g., Capper v. Callahan*, 39 Wn.2d 882, 887, 239 P.2d 541 (1952).

### APPLICATION OF THE *FERES* DOCTRINE

■ Gennoe next contends that the trial court incorrectly applied the *Feres* Doctrine to find a lack of jurisdiction in this case. This is a new issue presented to the Washington appellate courts. The United States Supreme Court in the case of *United States v. Shearer*, 473 U.S. 52, 57, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985), described the *Feres* Doctrine:

> Our holding in *Feres* v. *United States*, 340 U. S. 135 [95 L. Ed. 152, 71 S. Ct. 153] (1950), was that a soldier may not recover under the Federal Tort Claims Act for injuries which "arise out of or are in the course of activity incident to service." *Id.*, at 146. Although the Court in *Feres* based its decision on several grounds,
> "[i]n the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.'" *United States* v. *Muniz*, 374 U. S. 150, 162 [10 L. Ed. 2d 805, 88 S. Ct. 1850] (1963), quoting *United States* v. *Brown*, 348 U. S. 110, 112 [99 L. Ed. 139, 75 S. Ct. 141] (1954).
> *The* Feres *doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in* Feres *and subsequent cases.* Here, the Court of Appeals placed great weight on the fact that Private

Shearer was off duty and away from the base when he was murdered. But the situs of the murder is not nearly as important as whether the suit requires the civilian court to second–guess military decisions, see *Stencel Aero Engineering Corp.* v. *United States,* 431 U. S. 666, 673 [52 L. Ed. 2d 665, 97 S. Ct. 2054] (1977), and whether the suit might impair essential military discipline, see *Chappell* v. *Wallace,* 462 U. S. 296, 300, 304 [76 L. Ed. 2d 586, 103 S. Ct. 2362] (1983).

(Italics ours.) *Feres,* and the vast majority of its progeny, concerned a suit against the United States government under the Federal Tort Claims Act, and the cases are distinguishable from the present action. There are several cases, however, concerning claims between military personnel where the Doctrine has been applied. Although Sypolt cites many cases, not all are germane.

The plaintiff in *Stauber v. Cline, supra,* had sought recovery against three co–workers, including his immediate superior, for intentional infliction of mental anguish and libel arising from a 5–year course of harassing actions both at and away from work. During this whole time the plaintiff and all three of the defendants were members of the Air National Guard and their full–time work as military mechanics was under the direct supervision of a regular military officer. The *Stauber* court, in explaining why it found *Feres* to apply to the case before it, stated:

Here, the district court found that in their work Stauber and the defendants were always under the direct command of active–duty military officers. The parties shared the same direct military relationships whether on civilian or military status. Their conduct was subject to military discipline, and indeed, plaintiff requested that his superiors step in to improve the situation. *Compare Millang* [*v. United States*] 817 F.2d [533 (9th Cir. 1987)] at 535 (all participants, including civilians, were subject to military statutes, regulations, and orders).

*Shearer* and [*United States v.*] *Johnson* [481 U.S. 681, 95 L. Ed. 2d 648, 107 S. Ct. 2063 (1986)] were not actions against individual, nongovernmental defendants. Nonetheless, we conclude that the National Guard mechanic–technicians' work was just as integral to routine military activities as was the work of the air traffic controllers held to be immune in *Johnson.* Stauber's claims "are the '*type[s]* of claims that, if generally permitted, would involve the judiciary. in sensitive military affairs at the expense of military discipline and effectiveness.'"

*Johnson,* 107 S.Ct. at 2069 (brackets in original) (quoting *Shearer,* 473 U.S. at 59, 105 S.Ct. at 3044 (emphasis in original)).

Nor is Stauber entitled to establish that *some* of the defendants' conduct did not involve questions of workplace supervision, military regulations, remedies provided under those regulations, and military decisionmaking. Although Stauber alleged that some of the harassment occurred offbase, the district court concluded that his claims arose from conduct in the workplace. On appeal, Stauber has failed to show that this finding was clearly erroneous. Moreover, it is clear from the record that the off–base, after–hours harassment was merely an extension of on–base events to which intramilitary immunity properly applies. To examine the relationship between on– and off–base events in this case, beyond determining that the conduct involved was incident to service, would result in an impermissible intrusion upon military matters. Stauber's action was correctly dismissed under *Feres* and *Johnson.*

(Footnote omitted.) *Stauber,* at 400.

The *Feres* Doctrine and its application in suits between or against military personnel, as opposed to suits against the government, has been further developed in two more recent cases. Both seem to indicate that *Feres* would not necessarily remove the present case from civil court jurisdiction.

In *McGowan v. Scoggins,* 890 F.2d 128 (9th Cir. 1989), the court reviewed a district court dismissal, on the basis of *Feres,* of a claim brought by a medically discharged Vietnam vet who was on a personal errand to an Air Force base to obtain a parking decal when he was subjected to false arrest and imprisonment, assault and battery and intentional and negligent infliction of emotional distress. Discussing its prior decision in *Stauber* the court stated that that decision had been based on the fact that the plaintiff's alleged injuries had occurred as an "incident to" military service and prior to the time the plaintiff and the defendants had reverted to civilian status. The court distinguished its result in *McGowan,* stating:

> Professor McGowan was not employed at Mather Air Force Base. His work as a history teacher at the University of California at Davis is not subject to military supervision, command, or discipline. While on a military base, he is subject to

the same regulations that govern the conduct of any other civilian visitor. Professor McGowan, while standing in line at the Visitor's Center to get a parking decal was under "compulsion of no orders or duty and on no *military* mission." *Feres,* 340 U.S. at 146, 71 S.Ct. at 159 (emphasis added). The injuries Professor McGowan sustained while attempting to get a parking decal were not incident to his former military service "except in the sense that all human events depend upon what has already transpired." *Brooks [v. United States],* 337 U.S. [49, 93 L. Ed. 1200, 69 S. Ct. 918 (1949)] at 52, 69 S.Ct. at 920. Professor McGowan's "presence on the base [had] little to do with [his prior] military services." *Johnson [v. United States],* 704 F.2d [1431 (9th Cir. 1983)] at 1437. Because Professor McGowan's claims are directed against military officials who have no supervisory control over his civilian employment, they are not subject to dismissal for lack of subject matter jurisdiction under the intramilitary immunity doctrine.

*McGowan,* at 139.

In *Durant v. Neneman,* 884 F.2d 1350 (10th Cir. 1989), *cert. denied,* 110 S. Ct. 728 (1990), the court considered a suit brought by the survivor of one soldier and by a second injured soldier. The two soldiers had been engaged in a physical training exercise on the base at Fort Riley, Kansas, when they were struck by a private vehicle driven by the defendant, who was also in the military and in uniform at the time. The defendant had been on the way to his duty post when the incident occurred. The trial court dismissed the case, relying on *Feres,* because the injured parties had been engaged in military activity at the time they were injured. The Tenth Circuit Court of Appeals examined the growth and expansion of the *Feres* Doctrine and reversed, stating:

> *Feres* is grounded upon three broad rationales. First, "[t]he relationship between the government and the members of its armed forces is 'distinctively federal in character.'" *Feres,* 340 U.S. at 143, 71 S.Ct. at 157 (quoting *United States v. Standard Oil Co. of Cal.,* 332 U.S. 301, 305, 67 S.Ct. 1604, 1607, 91 L.Ed. 2067 (1947)). Second, "statutory veterans' benefits 'provid[e] an upper limit of liability for the Government as to service–connected injuries.'" *Johnson,* 481 U.S. 681, 690, 107 S.Ct. 2063, 2069, 95 L.Ed.2d 648 (quoting *Stencel Aero Eng'g Corp. v. United States,* 431 U.S. 666, 673, 97 S.Ct. 2054, 2059, 52 L.Ed.2d 665 (1977)). Third, suits by a service member against

the government "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States v. Shearer,* 473 U.S. 52, 59, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985).

The doctrine of intra–military immunity is an outgrowth of the third *Feres* rationale that decries the propriety of civilian courts delving into military matters and calling to bar military decisions and institutions. . . .

. . . .

. . . Thus, our evolving jurisprudence has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts. It is our conclusion, however, that this zone was never intended to protect the personal acts of an individual when those acts in no way implicate the function or authority of the military. We can find nothing that would dictate a contrary conclusion.

(Footnotes omitted.) *Durant,* at 1352–53. The court went on to state qualifications to *Feres:*

While civilian courts have a legitimate concern for protecting the harmony of the military establishment to prevent an erosion of discipline, we do not believe this concern should be extended to claims that arise outside the military function. When a soldier commits an act that would, in civilian life, make him liable to another, he should not be allowed to escape responsibility for his act *just because those involved were wearing military uniforms at the time of the act.* When military personnel are engaged in distinctly nonmilitary acts, they are acting, in effect, as civilians and should be subject to civil authority. Mindful of the Supreme Court's observation in *Feres* that courts should not create causes against the military when they have not been recognized in the past, we nonetheless believe that common–law actions between military persons for distinctly nonmilitary acts break no new ground. Except for the penumbra of *Feres,* there would be no question that the defendant in this case could be called to task for his alleged acts. The only question is whether he was performing a military act at the time of the incident.

The issue thus devolves into whether the act of driving to his duty station was a military act. We think not. If one were to view this question as synonymous with whether the act of driving was "incident to military service," the answer would have to be different. Indeed, it is hard, if not impossible, to decide at what point actions leading to the performance of a military task are not incidental to that end. Yet, if one focuses on the military purpose or mission of the defendant's conduct precipitating plaintiff's claim in the context of a need to protect military integrity, harmony, or authority, one must decide

the mere act of driving to work, without more, is not the performance of a military act.

(Footnote omitted.) *Durant,* at 1354. As stated by the *Durant* court the test to be applied is whether the injuries alleged arose out of conduct that has a military purpose or mission. This corresponds with the language of the Ninth Circuit in *McGowan* where the court looked to whether the *plaintiff's* actions at the time of the injury were pursuant to a military mission.

The test set forth in *Durant* is the culmination of an apparent movement to limit *Feres* to the purposes underlying its propagation. The present case must be examined in this light and jurisdiction must be determined in light of the particular facts of the case. *Shearer,* 437 U.S. at 57.

The allegations of fact here indicate a tie between the actions of both parties underlying the claimed injuries and the "military missions" of Gennoe and Sypolt as recruiting officers.

Gennoe has alleged that Sypolt's motivation arose out of four factors: (1) resentment at having Gennoe as a superior; (2) jealousy of Gennoe's record as a recruiter; (3) a dispute over who was to receive credit for a number of recruits that Gennoe had begun processing, but who were finished by Sypolt when Gennoe was hospitalized, which was decided in Gennoe's favor; and (4) revenge for a third person (also Army personnel), who was a friend of Sypolt's that Gennoe had put on report.

Both parties instituted internal military investigations concerning the other. Sypolt evidently provided information on a DWI charge against Gennoe that she had failed to report in the course of reenlistment. Sypolt also made a sworn statement concerning his allegations of her drug use. As a result of the failure to declare the DWI, and because of the "sullying" of her name resulting from the drug investigation (and although the charges were ultimately deemed to be unfounded), Gennoe was involuntarily transferred out of the recruiting service.

Gennoe instigated an Army internal investigation of Sypolt for the alleged harassment. He apparently was cleared by this investigation. Gennoe also brought a criminal action against Sypolt.

The question would thus seem to be whether these actions are so tied to the military roles of these parties as to invoke the prohibitions of *Feres* on jurisdiction of the civil courts. The case in our view is factually closer to *Stauber* than to *Durant.* We would be reentering the areas of prior military investigations, which, for whatever reason, resulted in decisions not to discipline Sypolt, but did result in Gennoe's involuntary transfer. If we were to accept jurisdiction, we would in a large measure be retrying issues upon which the military discipline system had previously ruled.

We therefore affirm the judgment of dismissal.

COLEMAN, J., concurs.

WEBSTER, A.C.J. (dissenting)—The majority correctly states that the test to be applied is "whether the injuries alleged arose out of conduct that has a military purpose or mission" (majority, at 524) and whether the actions of the parties "are so tied to the military roles . . . as to invoke the prohibitions of *Feres* on jurisdiction of the civil courts." Majority, at 525. Having found neither test satisfied, I respectfully dissent.

In *Feres v. United States,* 340 U.S. 135, 146, 95 L. Ed. 152, 71 S. Ct. 153 (1950), the United States Supreme Court held that a service person may not recover for injuries which "arise out of or are in the course of activity incident to service." The purpose of the so-called "*Feres* Doctrine" is to keep the private sector out of military affairs which are either secret or involve national security. One of the rationales behind the doctrine is that if suits by a service member against the government were generally permitted, it "would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *United States v. Johnson,* 481 U.S. 681, 690, 95 L. Ed. 2d

648, 107 S. Ct. 2063 (1986) (quoting *United States v. Shearer,* 473 U.S. 52, 59, 87 L. Ed. 2d 38, 105 S. Ct. 3039 (1985)).

However,

> [w]hen a soldier commits an act that would, in civilian life, make him liable to another, he should not be allowed to escape responsibility for his act *just because those involved were wearing military uniforms at the time of the act.* When military personnel are engaged in distinctly nonmilitary acts, they are acting, in effect, as civilians and should be subject to civil authority.

*Durant v. Neneman,* 884 F.2d 1350, 1354 (10th Cir. 1990), *cert. denied,* 110 S. Ct. 728 (1990). Furthermore,

> The doctrine of intra–military immunity is an outgrowth of the third *Feres* rationale that decries the propriety of civilian courts delving into military matters and calling to bar military decisions and institutions. . . .
>
> . . . .
> . . . Thus, our evolving jurisprudence has created a zone of protection for military actors, immunizing actions and decisions which involved military authority from scrutiny by civilian courts. It is our conclusion, however, that this zone was never intended to protect the personal acts of an individual when those acts in no way implicate the function or authority of the military. We can find nothing that would dictate a contrary conclusion.

(Footnotes omitted.) *Durant,* at 1352–53.

This case does not involve military secrets or national security. The harassing phone calls and the defamation which occurred were not military acts. The alleged wrongs were "personal acts of an individual" which "in no way implicate the function or authority of the military." To hold otherwise, as the majority does today, would undermine the purpose of the *Feres* Doctrine—a result I do not believe is merited in this case.

Review denied at 116 Wn.2d 1034 (1991).