107 F.3d 705
 73 Fair Empl.Prac.Cas. (BNA) 269,
69 Empl. Prac. Dec. P 44,523,
97 Cal. Daily Op. Serv. 1112,
97 Daily Journal D.A.R. 1713
W.L. HODGE, Plaintiff-Appellant,
v.
John DALTON, officially as Secretary of the Navy, Defendant-Appellee.
 No. 95-16036.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1996.
Decided Feb. 19, 1997.
 
 William Tagupa, Honolulu, Hawai'i, for plaintiff-appellant.
 Sandra Wien Simon, United States Department of Justice, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court for the District of Hawai'i, Helen Gillmor, District Judge, Presiding. D.C. No. CV-94-00970-HG.
 Before: FLETCHER, WIGGINS, and T.G. NELSON, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 OVERVIEW
 
 1
 Plaintiff/appellant W.L. Hodge filed an action in federal district court seeking declaratory and mandamus relief against defendant/appellee John Dalton in his official capacity as Secretary of the Navy. Specifically, Hodge sought to compel defendant Dalton to process his formal complaint of racial discrimination in accordance with established procedures of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("the Act" or "Title VII"), and appropriate federal regulations. The district court dismissed the action, finding that it lacked jurisdiction over the matter. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 The facts of this case are not in dispute. Hodge is an active-duty service member in the United States Marine Corps. He is currently assigned to duty at Camp H.M. Smith, Marine Corps Base Hawaii, on the island of Oahu, Hawaii, in postal operations. In addition to his military assignment, Hodge worked as a duty manager during his off-duty hours at the United States Marine Corps Base enlisted club at Kaneohe, Hawaii. The enlisted club is an entity within the base's Morale, Welfare and Recreation ("MWR") Department.
 
 
 3
 After Hodge and his supervisor at the MWR got into a dispute concerning the number of hours Hodge was required to work, Hodge attempted to file an Equal Employment Opportunity Commission ("EEOC") complaint with the MWR personnel office. The complaint alleged racial discrimination. Mr. Charles Garza, Formal Discrimination Complaints Manager at Camp Pendleton, California, rejected Hodge's complaint on the ground that Hodge was specifically excluded from Title VII coverage as a uniformed service member.
 
 
 4
 Hodge subsequently filed the present case in federal district court, seeking a declaratory judgment or mandamus relief. Specifically, Hodge moved the district court to compel Dalton to process his formal complaint of discrimination in accordance with established Title VII procedures and appropriate federal regulations. In the alternative, Hodge sought to have the district court order Dalton to issue a written notice of dismissal of his complaint of discrimination with language informing him of his right to appeal the dismissal, without prejudice, to the EEOC.
 
 
 5
 Dalton brought a motion to dismiss the complaint, claiming that the district court lacked subject matter jurisdiction over Hodge's complaint and that the district court was required to dismiss the complaint for failure to state a claim upon which relief may be granted. The district court granted the motion to dismiss, denying Hodge's request for declaratory and mandamus relief. Hodge timely appeals.
 
 STANDARD OF REVIEW
 
 6
 We review a district court's dismissal of a complaint for lack of subject matter jurisdiction de novo. Bon v. United States, 802 F.2d 1092, 1094 (9th Cir.1986).
 
 ANALYSIS
 
 7
 The United States is immune from suit unless it consents to waive its sovereign immunity. Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). The terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. Id. The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities. South Delta Water Agency v. U.S., Department of Interior, 767 F.2d 531, 536 (9th Cir.1985). Any waiver of immunity must be "unequivocally expressed," and any limitations and conditions upon the waiver "must be strictly observed and exceptions thereto are not to be implied." Lehman, 453 U.S. at 160-61, 101 S.Ct. at 2701-02.
 
 
 8
 The underlying action in the present case was brought against John Dalton in his official capacity as Secretary of the Navy. Thus, sovereign immunity bars Hodge's action, and the district court lacked subject matter jurisdiction over the action, unless a waiver of immunity exists. The only possible waiver of sovereign immunity in the present action is Title VII.
 
 
 9
 The United States is not an employer amenable to suit under the general provisions of Title VII.[1] Suits involving federal employment are instead governed by 42 U.S.C. § 2000e-16, which provides in relevant part:
 
 
 10
 All personnel actions affecting employees or applicants for employment ... in military departments as defined in section 102 of Title 5,[2] in executive agencies as defined in section 105 of Title 5[3] (including employees and applicants for employment who are paid from nonappropriated funds) ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.
 
 
 11
 42 U.S.C. § 2000e-16(a) (footnotes added).
 
 
 12
 Congress expressly granted the EEOC rulemaking authority to implement and enforce Title VII. 42 U.S.C. § 2000e-16(b). Pursuant to this grant of authority, the EEOC promulgated regulations defining the various forms of discrimination prohibited by Title VII and establishing the procedure for enforcement. In these regulations, the EEOC interprets Title VII as not applying to complaints of discrimination by active-duty service members:
 
 
 13
 (a) Individual and class complaints of employment discrimination and retaliation prohibited by title VII ... shall be processed in accordance with this part....
 
 
 14
 (b) This part applies to:(1) Military departments as defined in 5 U.S.C. 102;
 
 
 15
 (2) Executive agencies as defined in 5 U.S.C. 105;
 
 
 16
 ....
 
 
 17
 (d) This part does not apply to:
 
 
 18
 (1) Uniformed members of the military departments referred to in paragraph (b)(1) of this section....
 
 
 19
 29 C.F.R. § 1614.103. This regulation affects "individual rights and obligations," and thus constitutes a substantive rule. Chrysler Corp. v. Brown, 441 U.S. 281, 302, 99 S.Ct. 1705, 1717-18, 60 L.Ed.2d 208 (1979). Moreover, because this substantive rule was promulgated under a specific grant of congressional authority, it has the "force and effect of law." Id. at 301-02, 99 S.Ct. at 1717-18.
 
 
 20
 Hodge is an active-duty member of the Marine Corps and is thus a uniformed member of a military department.[4] He is therefore explicitly excluded from coverage by EEOC regulations. See 29 C.F.R. § 1614.103(d).
 
 
 21
 However, Hodge contends that the EEOC regulation is invalid. Hodge argues first that the regulation conflicts with § 2000e-16(a); and second, that § 1614.103(d)(1) was invalidly promulgated.
 
 
 22
 A. Section 1614.103(d)(1) does not conflict with § 2000e-16(a).
 
 
 23
 Under § 2000e-16(a), Title VII protection is extended to employees in "military departments" and "executive agencies." In § 1614.103, the EEOC has interpreted Title VII to not apply to uniformed members of the military departments. Hodge argues that the EEOC's interpretation conflicts with § 2000e-16(a) and is therefore invalid. We disagree.
 
 
 24
 In Gonzalez v. Department of Army, 718 F.2d 926, 928 (9th Cir.1983), this court held that the term "military departments" in § 2000e-16(a) "include[s] only civilian employees of the Army, Navy, and Air Force and not both civilian employees and enlisted personnel." In reaching this conclusion, we compared the definition that Congress had given "armed forces" with the definition that Congress had given "military departments." We noted that Congress had defined "armed forces" in 10 U.S.C. § 101 as "the Army, Navy, Air Force, Marine Corps, and Coast Guard." Id. This definition differed from the definition that Congress used for "military departments" in 5 U.S.C. § 102. Id. We concluded that "[t]he two differing definitions show that Congress intended a distinction between 'military departments' and 'armed forces,' the former consisting of civilian employees, the latter of uniformed military personnel." Id. We then examined the legislative history of § 2000e-16(a) and concluded that the legislative history also provided "a strong inference that section [2000e-16] was not intended to extend Title VII coverage to enlisted and commissioned members of the armed forces in active service." Id.
 
 
 25
 All other circuits to address the issue have also held that Title VII is inapplicable to uniformed members of the military. See, e.g., Doe v. Garrett, 903 F.2d 1455, 1461-62 (11th Cir.1990) (barring naval reserve member's Rehabilitation Act claim that his release from active-duty military was due to discrimination based on his handicap), cert. denied, 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); Roper v. Department of Army, 832 F.2d 247, 248 (2d Cir.1987) (barring army reserve member's claim that she was not promoted due to racial and sexual discrimination); Stinson v. Hornsby, 821 F.2d 1537, 1541 (11th Cir.1987) (barring national guard member's claim that his discharge was due to racial discrimination), cert. denied, 488 U.S. 959, 109 S.Ct. 402, 102 L.Ed.2d 390 (1988); Taylor v. Jones, 653 F.2d 1193, 1200 (8th Cir.1981) (barring national guard member's claim that she was demoted due to racial discrimination); Johnson v. Alexander, 572 F.2d 1219, 1223-24 (8th Cir.) (barring army applicant's claim that he was rejected due to racial discrimination), cert. denied, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978). This interpretation of § 2000e-16(a) is consistent with § 1614.103(d)(1), which excludes uniformed members of the military departments from coverage. Therefore, § 1614.103(d)(1) does not conflict with § 2000e-16.
 
 
 26
 Hodge also argues that because "MWR is a program operated by the U.S. Navy largely out of non-appropriated funds, using largely civilian employees," it is "thus a 5 U.S.C. Sec. 105 military dept." This argument is negated by the plain language of the relevant statutes.
 
 
 27
 Section 2000e-16(a) provides coverage for employees or applicants for employment in "military departments as defined in section 102" or in "executive agencies as defined in section 105 ... (including employees and applicants for employment who are paid from nonappropriated funds)...." The plain language of § 2000e-16(a) makes it clear that a "military department" must come under the definition of § 102 to be covered by Title VII. Section 102 does not distinguish between military departments operated out of appropriated funds and those using nonappropriated funds. Furthermore, § 105 defines an executive agency as: "an Executive department, a Government corporation, and an independent establishment." The term "military department" is never used in § 105. Therefore, the plain language of § 105 does not cover military departments. Finally, although the MWR is apparently operated largely out of nonappropriated funds, § 2000e-16's parenthetical discussion of nonappropriated funds modifies the definition of "executive agencies"; it does not modify the definition of "military departments."
 
 
 28
 Finally, Hodge argues that Gonzalez and the other cases interpreting § 2000e-16 are inapposite to his case because those cases relied upon the assumption that the relationship between a uniformed member of the armed forces and the military services is distinct from a traditional employer-employee relationship. In contrast, he argues that his claim does not arise out of his military relationship with the Navy, but rather arises out of his part-time employment conditions with a component of the Navy that is neither related to nor dependent upon his military status. In support of this argument, Hodge relies upon Mier v. Owens, 57 F.3d 747 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1317, 134 L.Ed.2d 470 (1996).
 
 
 29
 In Mier, the plaintiff worked as a technician for the Army National Guard. His job was a hybrid position, combining both military and civilian aspects. He served in a civilian capacity as a full-time supply management officer and in a military capacity as a commissioned officer not on active duty. To hold the civilian position, the plaintiff was required to be a member of the National Guard and to hold the commensurate military position. Id. at 748. The issue before this court was whether the technician, whose job was a hybrid military-civilian position, could maintain a Title VII employment discrimination action. Id. We stated:
 
 
 30
 [I]n some circumstances, personnel actions are not integrally related to the military's structure. Concerns regarding military hierarchy and discipline may not be at issue in suits alleging discriminatory conduct on the part of peers or subordinates. In addition, actions affecting civilian employees may not involve matters considered military in nature. Because Guard technicians are in a hybrid job entailing both civilian and military aspects, we conclude that Title VII coverage of civilians employed by the military encompasses actions brought by Guard technicians except when the challenged conduct is integrally related to the military's unique structure.
 
 
 31
 Id. at 750. We held that the claimed discriminatory actions-failure to promote, suspension from the civilian job, and retaliation-were integrally related to the military's structure and therefore were not within Title VII coverage. Id. at 751.
 
 
 32
 Hodge's reliance on Mier is misplaced. First, in Mier, we explicitly stated that although Title VII protects civilian employees of the military from employment discrimination, it does not protect military personnel. Id. at 749. It is undisputed that Hodge is "military personnel." Second, the plaintiff in Mier was a hybrid military-civilian; the plaintiff was not on active-duty status. Hodge, in contrast, is not a military-civilian hybrid; he is an active-duty member of the military. The fact that a civilian could hold the part-time position in which he is employed at the enlisted club does not change his status.
 
 
 33
 Furthermore, the action in the present case involves conduct which is integrally related to the military's unique structure. The MWR where Hodge works part-time is governed by a military chain of command. The MWR was under the direct supervision of Colonel Richard Crawford, Commander of the Air Station. Therefore, although the Secretary of the Navy is the named defendant as required under 42 U.S.C. § 2000e-16(c), the real party in interest in the present action is the installation commander as the operator of the club system. Thus, this action involves a legal challenge to a senior Marine Corps Officer.
 
 
 34
 The doctrine of intramilitary immunity, or "the Feres doctrine," lends further support to the conclusion that Hodge is not covered by § 2000e-16. Under this doctrine, members of the armed forces may not bring an action against the Government or armed service personnel for injuries during activity under the control or supervision of a commanding officer. McGowan v. Scoggins, 890 F.2d 128, 132 (9th Cir.1989). The doctrine is generally raised in Federal Tort Claims Act ("FTCA") cases applying Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).
 
 
 35
 In Feres, there were three separate causes of action: two for medical malpractice by military doctors and one for maintenance of unsafe barracks. 340 U.S. at 137, 71 S.Ct. at 155. The Court held that none of these claims was sufficient to establish a cause of action under the FTCA. The Court stated: "[T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146, 71 S.Ct. at 159 (emphasis added). "The presence of direct military control is sufficient to establish the activity as incident to military service." Bon, 802 F.2d at 1096.
 
 
 36
 Although the doctrine of intramilitary immunity is generally applied in connection with the FTCA, its applicability is not limited to FTCA cases. The doctrine is instead applicable whenever a legal action "would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States." McGowan, 890 F.2d at 132 (citing United States v. Shearer, 473 U.S. 52, 57, 105 S.Ct. 3039, 3042-43, 87 L.Ed.2d 38 (1985)). See also Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (applying intramilitary immunity doctrine to both a Bivens action and a claim under 42 U.S.C. § 1985).
 
 
 37
 In the present case, although Hodge's immediate supervisors were apparently civilian, the military chain of command retained direct control over MWR and its employees. The MWR was required to abide by regulations from higher headquarters within the military chain of command. Regulations governing operation of the MWR were issued by Headquarters Marine Corps, the Department of the Navy and the Department of Defense. These regulations from higher headquarters are mandatory on each MWR throughout the Marine Corps. Furthermore, each installation issues its own regulations governing various aspects of the MWR. These local regulations, called Base Orders, are issued under the authority of the Commanding General of the Base. Hodge, as an active-duty member of the military, was at all times "subject to military discipline for any violations of these rules, regulations, and guidelines." Bon, 802 F.2d at 1093. See also Mariano v. United States, 605 F.2d 721, 723 (4th Cir.1979) ("All military personnel, whether patrons or employees, were subject to discipline under the Uniform Code of Military Justice for their conduct in the [Officer's] Club."). Thus, Hodge's employment at the MWR was subject to "direct military control" and as such was "incident to military service." Bon, 802 F.2d at 1096. Therefore, Hodge's employment falls within the doctrine of intramilitary immunity.
 
 
 38
 This conclusion is not inconsistent with Johnson v. United States, 704 F.2d 1431 (9th Cir.1983). In Johnson, we held that the Feres doctrine did not bar a cause of action by an Air Force noncommissioned officer who was injured in an automobile accident near a military base. The plaintiff was injured during his off-duty time, after working at his on-base job as a bartender at the Noncommissioned Officers Club ("NCO Club"). He, along with some friends, had a party at the club after closing hours. The plaintiff was injured after he left the party when the car in which he was riding crashed into a tree. We held that the doctrine of intramilitary immunity did not bar recovery under the FTCA.
 
 
 39
 First, at the time the government's negligence occurred, Johnson was not subject in any real way to the compulsion of military orders....
 
 
 40
 The fact that Johnson was not under military control easily distinguishes the other cases that have concluded that activities in NCO clubs are incident to military service. In Mariano v. United States, 605 F.2d 721 (4th Cir.1979), for example, the plaintiff was employed during his off-duty hours as night manager of a Club. Plaintiff was injured while attempting to break up a fight between two patrons. In holding that the Feres doctrine barred plaintiff's suit, the court emphasized that official military regulations made the night manager responsible for maintaining order in the Club. Thus, the plaintiff in Mariano was subject to direct military control and was assigned specific duties as night manager by military regulations. Conversely, Johnson was not subject to any such direct control at the time the negligent act occurred. Indeed, Johnson was injured because the NCO Club remained open in clear violation of Air Force regulations and state law.
 
 
 41
 Second, at the time of the government's negligence, Johnson was subject to military discipline only in the very remotest sense. Because Johnson was off-duty and working at a non-military second job, his activities were "purely personal."
 
 
 42
 Johnson, 704 F.2d at 1439-40 (citations omitted).
 
 
 43
 The distinctions made in Johnson are directly relevant to the present case. The alleged discrimination against Hodge occurred in the course of his employment at the MWR. The MWR is in the chain of military command and is subject to military rules, regulations and policies. Therefore, unlike Johnson, Hodge was subject to direct military control and discipline at the time the alleged discriminatory act occurred. Thus, the doctrine of intramilitary immunity applies and gives additional support to the conclusion that § 1614.103(d)(1)'s bar to Hodge's suit is consistent with § 2000e-16.
 
 
 44
 B. Section 1614.103(d)(1) was validly promulgated.
 
 
 45
 Title 5 U.S.C. § 553 provides the statutory notice and opportunity for comment requirements which an agency is to follow in promulgating substantive rules. It provides that an agency must publish a proposed rulemaking in the Federal Register unless persons subject to the rules are named and are either personally served or otherwise have actual notice thereof. 5 U.S.C. § 553(b). After the required notice is given, the agency must give interested persons an opportunity to participate in the rulemaking through submissions of written data, views, or arguments. 5 U.S.C. § 553(c). After the agency has considered the relevant matter presented, the agency is required to incorporate in the rules that it adopts a "concise general statement of their basis and purpose." Id.
 
 
 46
 In the present case, the EEOC published a "Notice of Proposed Rulemaking" and requested public comment on its proposed regulations. See 54 Fed.Reg. 45747 (October 31, 1989). The EEOC did not propose language specifying that uniformed members of the armed forces were not covered by Title VII. However, a comment was received regarding the coverage of uniformed members. In response to this comment, and after reviewing case law that addressed the coverage of uniformed members, the EEOC issued a final regulation that explicitly exempted uniformed members of the military departments from Title VII coverage. See 57 Fed.Reg. 12634, 12642 (April 10, 1992) (citing Johnson v. Hoffman, 424 F.Supp. 490 (E.D.Mo.1977), aff'd sub nom., Johnson v. Alexander, 572 F.2d 1219 (8th Cir.), cert. denied, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978)).
 
 
 47
 Hodge argues that § 1614.103(d)(1)'s exclusion of uniformed members from Title VII coverage is not valid because it was not promulgated properly. In support of this argument, Hodge points to the fact that the exclusion was not included in the EEOC's final notice of rulemaking. We reject this argument.
 
 
 48
 A new opportunity for comment is not generated every time the agency reacts to comments that it receives. City of Stoughton, Wis. v. EPA, 858 F.2d 747, 753 (D.C.Cir.1988). A final regulation that varies from the proposal, even substantially, will be valid as long as it is "in character with the original proposal and a logical outgrowth of the notice and comments." Rybachek v. EPA, 904 F.2d 1276, 1288 (9th Cir.1990).
 
 
 49
 Section 1614.103(d)(1) was promulgated pursuant to an explicit congressional grant of authority to the EEOC to implement and enforce § 2000e-16. The legislative history of § 2000e-16 indicates that Congress did not intend to vest the EEOC with the power to review the hiring and employment practices of the armed forces. See Roper, 832 F.2d at 248; Gonzalez, 718 F.2d at 928. In promulgating § 1614.103(d)(1), the EEOC was simply making explicit what was already implicit in the legislative history of § 2000e-16 and what was already understood to be the law. Thus, although § 1614.103(d)(1) was not specifically listed in the proposed rulemaking, the regulation is "in character with the original proposal and a logical outgrowth of the notice and comments," and was therefore validly promulgated. Rybachek, 904 F.2d at 1288. See also General Motors Corp. v. Ruckelshaus, 742 F.2d 1561, 1565-66 (D.C.Cir.1984) (interpretative rules do not need notice and comment), cert. denied, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985).
 
 CONCLUSION
 
 50
 Hodge, as a uniformed service member, is excluded from coverage under Title VII of the Civil Rights Act.[5] The district court's dismissal of the action for lack of subject matter jurisdiction is therefore affirmed.
 
 
 51
 AFFIRMED.
 
 
 
 [1]
 Title 42 U.S.C. § 2000e(b) provides: "The term 'employer' ... does not include (1) the United States...."
 
 
 [2]
 Title 5 U.S.C. § 102 defines "military department" as: "The Department of the Army. The Department of the Navy. The Department of the Air Force."
 
 
 [3]
 Title 5 U.S.C. § 105 defines "executive agencies" as: "[A]n Executive department, a Government corporation, and an independent establishment."
 
 
 [4]
 The Marine Corps is within the Navy Department and thus falls within 5 U.S.C. § 102's definition of "military department."
 
 
 [5]
 Hodge is not without a remedy for the alleged discriminatory acts. Uniformed members of the military have statutory remedies to correct racial discrimination in the military. See 10 U.S.C. § 1552; Chappell v. Wallace, 462 U.S. 296, 303-05, 103 S.Ct. 2362, 2367-68, 76 L.Ed.2d 586 (1983) (noting applicability of § 1552 to claims of racial discrimination by enlisted men and remanding for consideration of a claim of racial discrimination under 42 U.S.C. § 1985(3)). In addition, the military itself provides members with several remedies. The military EEO program provides a forum for complainants who feel that they have been the victim of discrimination. Hodge was specifically informed that this remedy was available to him. Service members may also file complaints pursuant to Article 138 of the Uniform Code of Military Justice, 10 U.S.C. § 938, or Article 1150 of Navy Regulations, or register a grievance with either the Inspector General or individual members of Congress