Filed 9/5/13  Taylor v. Cal. Air National Guard CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GARY TAYLOR, | C070759 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201100110670CUPOGDS) |
| v. | |
| CALIFORNIA AIR NATIONAL GUARD et al., | |
| Defendants and Respondents. | |

Plaintiff Gary Taylor, a member of the California Air National Guard, filed suit against defendants California National Guard and California Air National Guard (National Guard), Colonel John Crocker, and Major Thomas Keegan alleging defamation.  Taylor's claims stemmed from an interview given to a Sacramento Bee reporter by Crocker and Keegan regarding an investigation into allegations that National Guard pilots, including Taylor, were receiving dual compensation.  Defendants filed a demurrer and a motion to strike under Code of Civil Procedure section 425.16, the anti-

1

SLAPP statute.[1]  The trial court granted the motion to strike, finding Taylor's defamation claim arose from defendants' protected activity.  Taylor appeals, arguing Crocker's and Keegan's statements were not protected speech, and he can prevail on the merits of his claim.  We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1982 Taylor enlisted in the National Guard.  He earned his pilot wings in June 1985 and served as a fighter pilot, instructor pilot, evaluation pilot, squadron commander, and operations group commander.  In September 2009 Taylor was appointed commander of the 144th Fighter Wing in Fresno.  The 144th was in charge of performing air sovereignty alert duties.

In March 2010 a federal audit team from the National Guard Bureau conducted an audit of the air sovereignty alert mission at the 144th Fighter Wing.  The audit team found that " 'in some cases, pilots may have received pay twice in one day (pay for alert duty and pay for regular technician work, although not necessarily for the same 8-hour period.' "  Alert duty pay boosted some pilots' annual salaries by tens of thousands of dollars.

In response to the audit, Taylor requested a legal review of the negative finding by the Staff Judge Advocate of the National Guard to determine whether the pay issue was in compliance with military regulations.  On June 1, 2010, the Staff Judge Advocate prepared a written legal opinion which concluded that Taylor and the 144th Fighter Wing acted reasonably and within their proper authority in executing their mission, and that any technical violations were well within the legal interpretations contained in the relevant regulations.

---

[1]  Strategic Lawsuit Against Public Participation; all further statutory references are to the Code of Civil Procedure unless otherwise designated.

However, as a result of the audit, Taylor was removed from his position as the 144th Fighter Wing commander in July 2010 and returned to his position as a member of the National Guard. He remained a member of the National Guard until November 2011.

At all times material to the complaint, Colonel Crocker was the Director of Government and Public Affairs of the National Guard; Major Keegan was a public affairs officer with the National Guard.

In December 2010 Crocker and Keegan met with a Sacramento Bee reporter at the National Guard headquarters. The reporter stated he was investigating allegations that some 144th Fighter Wing pilots were " 'double dipping' " in violation of United States law and military regulations. The reporter's source was the 2010 federal audit. The comments made by Crocker and Keegan during this interview form the basis of Taylor's defamation action.

Taylor filed suit, alleging defamation against defendants. According to Taylor, Crocker told the Sacramento Bee reporter, " 'There is at a minimum an appearance that (commanders) self-enriched, and boy, does that smell bad.' " Crocker stated: "[F]rom a criminal standpoint, we'll have to wait and see," but "from a leadership standpoint, there is no waiting and seeing." According to Crocker, Brigadier General Mary J. Kight, the California National Guard's top commander, had lost " 'full faith and credit in Taylor's leadership skills.' " Crocker also theorized that the improper payments might reach into the millions of dollars.

Crocker also stated the pilots that were grounded because of the alleged improper payments might have been confused about the law and relied on Taylor's guidance. Crocker told the reporter that " 'the money is less of an issue than the leadership, in my book. And General Kight fixed that.' "

Taylor's complaint also alleged defendants told the reporter he was under criminal investigation and had violated both United States law and military regulations. Keegan stated General Kight had ordered an audit of all National Guard units, but no other

3

compensation problems had come to light. In addition, Taylor claimed Lieutenant General Harry Wyatt ratified Crocker's and Keegan's statements when he told the reporter, " 'I have great faith and confidence in the men and women of the 144th Fighter Wing. These are certainly trying times for the rank and file. It's unfortunate the alleged actions of a few have brought discredit to those men and women.' "

Defendants filed a demurrer and "Motion to Strike/Anti-SLAPP." Taylor opposed the motion.

Following oral argument, the trial court granted defendants' motion to strike. The court found Taylor's defamation claim arose from defendants' protected activity under section 425.16. According to the court, defendants' statements to the Sacramento Bee reporter constituted acts in furtherance of their right to free speech in connection with a public issue. In addition, defendants' statements were made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or made in a public forum in connection with an issue of public interest.

The court also determined Taylor failed to establish a probability of prevailing on his defamation claim. Defendants' statements were privileged within the meaning of Civil Code section 47, and defendants were immune under Military and Veterans Code section 392.

Taylor filed a timely notice of appeal.

## DISCUSSION

### Anti-SLAPP Motions

Subdivision (b)(1) of section 425.16 sets forth the elements of an anti-SLAPP motion. It provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right to petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

4

Protected acts include any oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body; any oral statement made in a public forum in connection with an issue of public interest; or any other conduct in furtherance of the exercise of free speech in connection with a public issue. (§ 425.16, subd. (e)(2), (3), (4).) Governmental employees may seek dismissal under section 425.16 because they are persons within the meaning of the statute. (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1114.) "[I]f government has a legitimate role to play in the interchange of ideas . . . then government should have some measure of protection in performing that role, at least as to matters of public interest." (*Id.* at p. 1115.)

Section 425.16 requires the trial court to engage in a two-step process to determine whether to grant or deny a defendant's anti-SLAPP motion. First, the court considers whether the defendant has made a threshold showing that the challenged cause of action arises from a protected activity. (§ 425.16, subd. (b)(1).) The defendant bears the burden of showing the plaintiff's cause of action arises from the defendant's exercise of free speech or petition rights as defined in section 415.16, subdivision (e). If the defendant makes this threshold showing, the burden shifts to the plaintiff to make a prima facie showing of facts that, if credited by the trier of fact, would sustain a favorable judgment. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61.)

We review de novo a trial court's ruling on a motion to strike under section 425.16. "Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both reviewed independently on appeal." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999.) On a motion to strike under section 425.16, every legitimate inference must be drawn from the plaintiff's evidence. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 828.) However, we must interpret

the anti-SLAPP statute broadly in order to encourage participation in matters of public significance.  (§ 425.16, subd. (a).)

**Protected Activity**

The statements made by Crocker and Keegan that Taylor claims defamed him were made to a newspaper reporter and concerned an investigation by the National Guard into payment irregularities.  As such, these statements were protected speech under section 425.16, subdivisions (e)(2), (3), and (4).

Section 425.16, subdivision (e)(2) encompasses any cause of action against a person arising from any statement or writing made in, or in connection with, an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding or body.  (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734.)  Defendants' comments concerned the audit and investigation by the National Guard Bureau.  They made their statements to a newspaper reporter, and the statements were reported in the press, a public forum.  In addition, the allegedly defamatory remarks concerned an issue of public interest:  an investigation into the propriety of payments made to military employees with tax dollars.

Taylor disagrees with the trial court's determination that Crocker's and Keegan's statements to the Sacramento Bee reporter were protected speech.  According to Taylor, defendant's statements to the press were "in direct violation of military regulations which define their duties."

In support of his claim, Taylor cites Air Force Instruction (AFI) No. 35-104, which provides that all public affairs personnel will closely consult with the Staff Judge Advocate prior to releasing pretrial publicity.  AFI No. 35-104 also directs personnel to avoid " 'sensationalism, exaggeration, and the use of the term "criminal["] ' " and not to use words " 'prejudicial to the accused before trial.' "  Taylor asserts compliance with AFI No. 35-104 is mandatory.  During oral argument, Taylor's counsel stated,

6

"Article 92 of the Uniform Code of Military Justice makes it a crime to violate military regulations."

Taylor contends: "Clearly there exist certain restrictions on the exercise of First Amendment rights in the military that are not applicable to civilian members of society. Both Crocker and Keegan were trained public affairs officer[s], to whom the regulations applied."

The trial court disagreed, finding that if defendants' statements violated military regulations, "such regulatory violations would not be subject to the rule of *Flatley* [*v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*)] because they do not rise to the level of inherent 'criminal illegality' as a matter of law." In *Flatley*, the plaintiff, an entertainer, sued the defendant attorney, citing a letter sent by the attorney on behalf of a client who accused the plaintiff of rape. Subsequently, the attorney demanded money to settle his client's claims against the plaintiff. The attorney brought a motion to strike.

The Supreme Court held that the anti-SLAPP statute does not protect speech that is conclusively shown or conceded to be "illegal as a matter of law." (*Flatley*, *supra*, 39 Cal.4th at p. 317.) Such speech is not a valid exercise of the constitutional right of petition or free speech. (*Id*. at p. 320.) The court concluded: "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint." (*Id.* at p. 305.)

The illegal conduct at issue in *Flatley* was criminal extortion, which the court found not a constitutionally protected form of speech. (*Flatley, supra,* 39 Cal.4th at pp. 330, 332.) Therefore, a defendant moving to strike a plaintiff's complaint under the anti-SLAPP statute cannot show the plaintiff's cause of action arises from an act in furtherance of the defendant's protected speech rights if the evidence conclusively establishes as a matter of law, or the defendant concedes, the illegality of the defendant's conduct on which the cause of action is based. However, if there is a factual dispute as to

7

the illegality of the defendant's conduct, we cannot conclude that the conduct was illegal as a matter of law, and we proceed to determine whether the defendant has established a probability of prevailing. (*Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1168-1169.)

An alleged violation of AFI No. 35-104 does not rise to the level of inherent criminal activity as a matter of law. Defendants' statements may violate the mandatory military regulations, but they do not constitute criminal activity as described in *Flatley*. *Flatley* does not extend to noncriminal conduct, even if that conduct may violate the law (e.g., a common law standard of conduct or statutory prohibition). (*Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 971; *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 616.)

Plaintiff argues military regulations are treated differently and cites *Parker v. Levy* (1974) 417 U.S. 733 [41 L.Ed.2d 439] (*Parker*). In *Parker*, an army officer refused to obey orders to train Special Forces troops and made public statements urging Negro enlisted men not to go to Viet Nam if ordered to do so. He also described Special Forces personnel as liars, thieves, killers of peasants, and murderers of women and children. The officer was convicted by a general court-martial of violations of the Uniform Code of Military Justice for willfully disobeying a lawful command of a superior officer and conduct to the prejudice of good order and discipline in the armed forces. (*Id*. at pp. 736-738.)

The officer argued his speech was protected by the First Amendment of the United States Constitution. The Supreme Court disagreed, finding: "While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission require a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it. Doctrines of First

8

Amendment overbreadth asserted in support of challenges to imprecise language like that contained in Arts. 133 and 134 are not exempt from the operation of these principles." (*Parker*, *supra*, 417 U.S. at p. 758.)

Taylor argues defendants cannot engage in conduct that is unlawful, as in *Parker*, and then argue it is protected speech: "Crocker and Keegan could and should have been court-martialed under the UCMJ [(Uniform Code of Military Justice)] for failure to obey a military regulation and for engaging in conduct unbecoming an officer, both of which carry a punishment of imprisonment. [¶] . . . The government cannot have it both ways. The government chose to proscribe the very conduct Crocker and Keegan engaged in. Therefore it was not protected speech."

However, *Parker* does not abrogate or alter *Flatley*. Defendants' conduct may or may not have run afoul of military regulations, but it did not constitute the illegal criminal conduct that *Flatley* found not to be protected speech.

**Ability to Prevail on the Merits**

We next consider whether Taylor has a probability of prevailing on his defamation claim. A plaintiff establishes a probability of prevailing on the claim by showing that the complaint is legally sufficient and supported by a prima facie showing of facts that, if proved at trial, would support a judgment in the plaintiff's favor. We do not weigh the evidence but determine whether, as a matter of law, the evidence is sufficient. We must consider not only facts supported by direct evidence, but also facts that reasonably can be inferred from the evidence. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *Taus v. Loftus* (2007) 40 Cal.4th 683, 713-714.) Defendants can defeat Taylor's evidentiary showing by presenting evidence that establishes as a matter of law that he cannot prevail. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

Taylor argues the trial court erred in finding *Feres v. United States* (1950) 340 U.S. 135 [95 L.Ed. 152] (*Feres*) barred his defamation claim. In *Feres*, the Supreme Court held that members of the armed forces may not bring tort lawsuits under the

9

Federal Tort Claims Act (Tort Claims Act; 28 U.S.C. § 2671 et seq.) for physical injuries that "arise out of or are in the course of activity incident to service." (*Feres*, *supra*, 340 U.S. at p. 146.) While the *Feres* case and its holding—that Congress did not intend to extend the remedies of the Tort Claims Act to servicemen where the injuries arise out of or are in the course of activity incident to service—concerned the Tort Claims Act, the rationale of *Feres* has been applied to a wide variety of statutory and constitutional claims. Thus, the "*Feres* doctrine" has a wider ambit than the *Feres* case. "*Feres* quite simply offers a template for construing a general statute as applied to active duty members of the military." (*Estes v. Monroe* (2004) 120 Cal.App.4th 1347, 1354 (*Estes*).) Moreover, "[i]t is beyond question that the *Feres* doctrine generally applies to claims brought by National Guard members. [Citations.]" (*Stauber v. Cline* (9th Cir. 1988) 837 F.2d 395, 399.)

Under *Feres*, a service member may not bring an action against the government or armed service personnel for injuries when such a legal action would require a civilian court to examine decisions regarding management, discipline, supervision, and control of the armed forces. While the *Feres* doctrine has been broadly construed as creating an immunity (*Hodge v. Dalton* (9th Cir. 1997) 107 F.3d 705, 710; *Zaputil v. Cowgill* (9th Cir. 2003) 335 F.3d 885, 887), other courts suggest "immunity" is not the proper term (*Estes*, *supra*, 120 Cal.App.4th at p. 1355). However, the result is the same: a member of the military is not permitted to recover in tort for injuries that arise out of or in the course of activity incident to service. (See *Feres*, *supra*, 340 U.S. at p. 146.)

We consider two factors to determine whether *Feres* applies to Taylor's claims: (1) whether Taylor was a member of the United States armed forces at the time he was injured, and (2) whether Taylor's injury arose from or occurred in the course of an activity incident to military service. (*McGowan v. Scoggins* (9th Cir. 1989) 890 F.2d 128, 132 (*McGowan*).) To make this determination, we examine the totality of the circumstances, including where the act occurred, the duty status of Taylor at the time, the

10

benefits accruing to Taylor from his military status, and the nature of Taylor's activities at the time. (*McConnell v. United States* (9th Cir. 2007) 478 F.3d 1092, 1095 (*McConnell*).)

The trial court found the *Feres* doctrine applied "because the action would require this civilian court to examine decisions regarding management, supervision, and control of members of the armed forces, or may intrude in military affairs and second-guess military decisions. At a minimum, plaintiff's claim would or could include inquiries into the application and effect of numerous military regulations on the dual status pay matter, the propriety of a military audit, the authority and limitation of military public affairs officers to make statements on behalf of the [National Guard], and the decision of a commanding officer to relieve another from command." The court also found the subject matter of the alleged defamatory statements arose directly from Taylor's military service and Taylor was not separated from his military service or status at the time of defendants' statements.

Taylor disputes these conclusions. He argues that at the time defendants made the defamatory statements, he was not subject to military control, under compulsion of military orders, nor was he performing any military mission. Instead, Taylor contends, he was a civilian airline pilot who had not performed any military function for over two months.

To the contrary, Taylor was a member of the National Guard until November 2011. Defendants' alleged defamatory statements were made on December 7, 2010. *Feres* applies to persons who are members of the armed forces at the time of injury; Taylor's discharge took place almost a year after defendants made the alleged defamatory statements to the Sacramento Bee.[2]

---

[2] Taylor concedes that at the time the statements were made, "he was no longer a full-time employee of the California Air National Guard, but was instead a part-time

11

Taylor also disagrees with the court's finding that his injury was incident to his service. He reasserts his argument that "[t]he nature of plaintiff's activities at the time of the act was that he was a civilian airline pilot living in San Diego. At the time of the act he was not subject to military authority, and his employment had ended."

We disagree. Taking into consideration the factors enumerated by the court in *McConnell*, we agree with the trial court's finding that the alleged defamatory statements were incident to Taylor's service in the National Guard. Defendants made the statements while on a military installation. The statements refer to Taylor's status as a wing commander at the 144th Fighter Wing. The subject matter of the statements was military payments made to Taylor, and the statements relate directly to his performance as wing commander.

However, Taylor argues that for *Feres* to apply he must have been "on orders" at the time of the injury. In support, Taylor relies on *Johnson v. United States* (9th Cir. 1983) 704 F.2d 1431 (*Johnson*); *McGowan*, *supra*, 890 F.2d 128; *Brooks v. United States* (1949) 337 U.S. 49 [93 L.Ed. 1200] (*Brooks*); and *United States v. Brown* (1954) 348 U.S. 110 [99 L.Ed. 139] (*Brown*).

In *McGowan,* a retired army captain was involved in an auto accident on an Air Force base while conducting a personal errand. The court found the *Feres* doctrine inapplicable to the captain's claim, since his injuries were not incident to his military service. (*McGowan, supra,* 890 F. 2d at p. 129.) Similarly, in *Johnson,* a member of the armed forces was injured in an auto accident. The plaintiff and the driver, both on active duty, worked as bartenders at an officers club during off-duty hours. (*Johnson*, *supra*, 704 F.2d at p. 1433.) In finding *Feres* inapplicable, the court determined the plaintiff's off-duty work as a bartender "bears no such relevant relationship to the military

guardsman, and had long been relieved of his command." However, the dispositive fact is that he remained a member of the National Guard.

disciplinary structure that the *Feres* doctrine was meant to safeguard." (*Johnson*, at p. 1438.)

The plaintiff in *Brooks*, also a member of the armed services, was injured when his car was hit by a United States Army truck. (*Brooks, supra,* 337 U.S. at p. 50.) The Supreme Court found the plaintiff's injury did not arise out of or in the course of military duty. (*Id.* at p. 52.) In *Brown*, a discharged veteran brought suit for negligence by physicians at a Veterans Administration hospital. (*Brown*, *supra*, 348 U.S. at pp. 110-111.) The court found *Feres* did not apply: "We adhere also to the line drawn in the Feres Case between injuries that did and injuries that did not arise out of or in the course of military duty." (*Brown*, at p. 113.) Another traffic accident claimed the life of a naval officer in *Mills v. Tucker* (1974) 499 F.2d 866. The officer was killed on a roadway maintained by the Navy and adjacent to a naval depot. The court found *Feres* inapplicable since the officer was on furlough the day of the accident and returning from a civilian job " 'moonlighting' as a fry cook." (*Mills*, *supra*, 499 F.2d at pp. 867-868.) The court found *Feres* did not apply, since the officer was "only in the remotest sense subject to military discipline." (*Mills*, at p. 867.) The court distinguished accidents on base, noting the accident site was not part of the naval depot. (*Id.* at p. 868.)

In contrast to the cases cited by Taylor, most of which involve auto accidents and activities not involved with military service, here Taylor's claims center on comments made by military personnel concerning a military investigation and audit into payments made to military personnel. These differences militate a different result.

As the trial court noted, in *Meagher v. Heggemeier* (D.Minn. 2007) 513 F.Supp.2d 1083, 1097-1098, the court applied *Feres* to a defamation claim asserted by a retired colonel in the National Guard stemming from comments made in a meeting at which other officers were present and where the colonel's application for a National Guard position was being considered. (*Meagher*, at pp. 1086-1087.) The court concluded: "We recognize that not every purported defamatory comment, by one military employee

13

against another, would necessarily implicate the *Feres* doctrine, since the purported defamation could be wholly unrelated to military service. Here, however, the alleged defamation was assertedly made solely in the context of a military promotion decision, by a member of the Board tasked with deciding who should be promoted, and in the very proceedings in which he was appointed to participate. The interrelationship between the defamation action, and military service, is direct, and avoidable, as Heggemeier is plainly being sued for his acts as a military man. . . . Accordingly, we find no ground, in this case, to ignore the clear precedent surrounding the *Feres* doctrine, so as to interfere in an intra-military decision that arose in the context of a personnel decision." (*Id.* at pp. 1097-1098.)

Notwithstanding the authorities cited by Taylor, his claim in the present case centers on comments made by defendants regarding his military service and his abilities as a commander. These alleged defamatory comments fall squarely within the purview of *Feres.* Therefore, we agree with the trial court's finding that *Feres* bars Taylor's claim of defamation based on defendants' statements regarding the audit and subsequent actions by the military.[3]

## DISPOSITION

The judgment is affirmed. Defendants shall recover costs on appeal.

                                        RAYE            , P. J.

We concur:

        BUTZ            , J.

        DUARTE          , J.

---

[3] Since we find *Feres* bars Taylor's claims of defamation against defendants, we need not address Civil Code section 47, subdivision (b) or Military and Veterans Code section 392.